[Civ. No. 4818.  First Appellate District, Division Two.—June 18.
1924.]

MARY ALCAMISI et al., Respondents, v. MARKET
  STREET RAILWAY COMPANY (a Corporation) et
  al., Appellants.

[1] NEGLIGENCE—CONTRIBUTORY NEGLIGENCE OF DECEASED—LAST CLEAR
  CHANCE — KNOWLEDGE OF DANGER—ERRONEOUS INSTRUCTION.—In
  an action for damages for the death of plaintiffs' intestate as the
  result of his having been struck by a street-car of the defendant
  railway company, it is error to instruct the jury that if they be-
  lieve the deceased was guilty of negligence and that the defendant
  was also guilty of negligence, the plaintiffs cannot recover, except

1.  Doctrine of last clear chance as affected by question whether
negligence of plaintiff or deceased and of defendant was concur-
rent, notes, Ann. Cas. 1912B, 888; 7 L. R. A. (N. S.) 132, 152; 17
L. R. A. (N. S.) 707; 19 L. R. A. (N. S.) 446; 27 L. R. A. (N. S.)
379.  See, also, 19 Cal. Jur. 657.

See 2 Cal. Jur. 1026; 14 R. C. L. 777.

if they also believe that, notwithstanding the negligence of the deceased in placing himself in a position of danger, the defendant, through its servant, the motorman, knew "or should have known by facts which would ordinarily come within the observation of an ordinarily reasonably careful man," that the deceased was in a position of danger, and could by the use of ordinary care have saved the deceased, notwithstanding the latter's negligence, then, under those circumstances, and under those circumstances only, can the plaintiffs recover.

[2] ID. — CONTRADICTORY INSTRUCTIONS—REVERSIBLE ERROR.—In such an action, where the instructions, as given by the court in the first instance, correctly state the law defining the last clear chance doctrine, and thereafter, and after the jury has retired to deliberate on its verdict, the court, in response to an inquiry by one of the jurors, gives a further oral instruction which not only constitutes an incorrect statement of the law, but also contradicts a prior correct instruction on the last clear chance doctrine, and it is impossible to say which of the two contradictory instructions the jury followed in rendering judgment for the plaintiffs, the giving of the erroneous oral instruction constitutes reversible error.

(1) 36 Cyc., p. 1633.   (2) 36 Cyc., p. 1635; 38 Cyc., pp. 1604, 1605, 1607.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. E. P. Shortall, Judge. Reversed.

The facts are stated in the opinion of the court.

Wm. M. Abbott, K. W. Cannon and Walter H. Linforth for Appellants.

Milton Marks and Marks & Cohen for Respondents.

STURTEVANT, J.—On the nineteenth day of October, 1921, Gaetano Alcamisi was struck by a street-car operated by the defendant and the injury was so severe that he died soon after. Later his children, through their guardian, commenced an action against the defendants to recover damages. A trial was had and the jury brought in a verdict in favor of the plaintiffs. Judgment was entered thereon and from that judgment the defendants have appealed under section 953a of the Code of Civil Procedure.

On the trial of the case it was the theory of the plaintiffs that the accident was the result of the negligence of the de-

fendants and that such negligence consisted of a failure to
sound a gong, the operation of the car at an excessive speed,
to wit, twenty or twenty-five miles per hour, and operating its
cars with its fenders so high that the fenders did not func-
tion.    The defendants controverted all of these charges and
claimed that the accident occurred by reason of the fact that
the decedent, while drunk, suddenly stepped or fell in front
of the defendants' car and although the car was stopped almost
instantly, nevertheless the accident had happened.  Many
witnesses were called and examined and there was some evi-
dence before the jury which tended to support each claim.
Moreover, the plaintiffs claimed that the case came within
the doctrine of the last clear chance, and they tendered in-
structions on the applicability of that doctrine and the trial
court gave some of them.

[1]    After the jury retired to deliberate on its verdict it
returned into court and the following proceedings were had:
"The Foreman: I would like to have this lady, Miss Stein-
man, ask the court.  Miss Steinman: If you think that the
defendant is guilty, but you think that the plaintiff was
guilty of contributory negligence in some degree, how does
that influence your verdict?  The Court: Well, in that case,
if you believe that the plaintiff was guilty of negligence and
that the defendant was also guilty of negligence, the plain-
tiff cannot recover, except if you also believe that notwith-
standing the negligence of the plaintiff in placing himself
in a position of danger, that the defendant, through its
servant, the motorman, knew *or should have known by facts
which would ordinarily come within the observation of an
ordinarily reasonably careful man* that he was in a position
of danger, and could by the use of ordinary care have saved
him notwithstanding his negligence, that is, notwithstanding
the negligence of the decedent, then, under those circum-
stances, and under those circumstances only, can the plain-
tiff recover.  Do I make that clear?  The Juror: Very
clear."    Then, acting upon request of counsel, or the request
of a juror, the trial court reread some of the other instruc-
tions, and also caused to be read the testimony of the motor-
man, Mr. Harrison, who was operating the street-car.  After
these proceedings had been had the jury retired and later
it returned into court and announced that it had agreed
upon a verdict.    That verdict was in the sum of $2,500.

Thereafter the defendants moved for a new trial, their motion was denied, and, as stated above, the defendants have appealed from the judgment.

The first point made by the appellants is that the statement made by the trial court in response to the question propounded by Miss Steinman was a misstatement of the law because it purports to rest the doctrine of last clear chance on what the motorman should have known instead of on what he actually knew. And appellants claim that because of what the motorman ought to have known the defendants were not liable under the last clear chance doctrine, and they cite and rely on *Herbert* v. *Southern Pac. Co.,* 121 Cal. 227 [53 Pac. 651] ; *Thompson* v. *Los Angeles etc. Ry. Co.,* 165 Cal. 748 [134 Pac. 709]. In reply the respondents contend that, if it be assumed that the instruction was erroneous, nevertheless it was not harmful and they cite and rely on *Collins* v. *Marsh,* 176 Cal. 639 [169 Pac. 389]. That case is not helpful. Marsh testified that he saw the buggy in the street and drove up to the buggy and collided therewith. In its decision the court said: "Nor was it denied that the appellant saw the buggy in ample time to enable him to avoid striking it. His own testimony was that he noticed it when he was still forty or fifty feet away." Whereas, in this case, the witness Harrison, the motorman, was called as a witness and was examined and cross-examined at length. As to when he first actually saw the deceased, the only evidence in the record was given by him. He testified: "I noticed a man come staggering out from behind the truck on my left. . . . I immediately began to make my stop, to stop the car, because I thought the man would continue right on across the way he was going and possibly fall in front of the car, which he did. I began my stop, and first rang the gong."

The other testimony given in the case, which it is necessary for us to consider, was given by a young Italian boy, Tony Vellone. His testimony pertinent to the matter under consideration was as follows: "Mr. Marks: Q. Did you see the motorman from where you were standing where [when] this man fell down? A. Yes. Q. What was the motorman doing? A. The motorman was looking towards the west. Q. Suppose you were the motorman standing there as the motorman was, show the jury just how the motorman was

looking. A. He was looking like this way all the time [showing]. The Court: Q. Looking over his right shoulder, that is true, is it not, Mr. Linforth? Mr. Linforth: That is the position the witness took. The Court: That is what I meant to ask. Mr. Marks: Q. How far away was the car from Mr. Alcamisi at the time the motorman was looking over his right shoulder, how far away was the car when you saw the motorman do that? Just about. You don't have to give me the exact feet and inches. Can you show me in this courtroom? When you say that the motorman had his face that way [indicating] how far away was the car from the man that you saw? Show us in this courtroom about how far, from where to where in this courtroom. A. I don't understand. Q. You say you saw the motorman turn with his face over his right shoulder, his head over his right shoulder that way [indicating]. When he had his face over his right shoulder did you also see this man who was killed, was he on the track then? A. He was on the track. Q. How far away was the car from the man on the track when you saw the motorman with his head turned over his shoulder? A. About thirty-five feet.'' If one reads the testimony last quoted, and if one then reads the instruction given orally in reply to the question propounded by Miss Steinman, the error is patent. In other words, as addressed to that testimony the jury could fairly and reasonably assume that the trial court had instructed the jury that the motorman and his employer were chargeable with the knowledge which a motorman should have had if he had been looking to the front when, as testified by Vellone, the motorman had his head to one side and was looking over his right shoulder when his car was thirty-five feet away and the decedent lay prostrate on the street-car track.

[2] As the record stood when the jury returned to the jury-room to deliberate for the second time on their verdict, there were then before them two contradictory instructions, plaintiffs' instruction number 5, which correctly stated the law defining the last clear chance doctrine, and the oral statement made by the court in reply to the juror, Miss Steinman, which statement, as we have just shown, was an incorrect statement of the law. It is impossible to say which of the two contradictory instructions the jury followed. When that is so, the giving of contradictory instructions is

reversible error.   In the case of *Hesler* v. *California Hospital Co.*, 178 Cal. 764, at page 768 [174 Pac. 654, 655], the supreme court said: "The court below in other instructions stated the rule by which the defendants were bound, accurately and clearly.   There is a clear conflict in the instructions.   We are unable to determine which set of rules the jury followed.   The case of the plaintiff on the merits, at best, is not strong.   We cannot say that these instructions were not injurious to the defendant and did not improperly control the deliberations of the jury in rendering a verdict. A number of objections were made to rulings upon evidence which it is unnecessary to discuss."   In the case of *Starr* v. *Los Angeles Ry. Corp.*, 187 Cal. 270, at page 280 [201 Pac. 599, 603], the same court said: "It is true, as respondent points out, that the instructions are to be construed together, but where the instructions are flatly contradictory, as is the case where the jury is instructed upon a specific state of facts to bring in a verdict in favor of the plaintiff or defendant and is elsewhere instructed in general terms not to do so, the instructions must be held to be conflicting and prejudicial, because it cannot be ascertained upon what theory the verdict was returned.   The theory of the plaintiff and defendant were diametrically opposed and the evidence, as well as the instructions, was sharply conflicting Under this condition it cannot be said that there is no miscarriage of justice when it cannot be ascertained from the record upon what theory the jury was authorized by the instructions of the court to render its verdict, or upon what state of facts shown in evidence the verdict was reached." The effect of the error was not lessened because the instruction complained of was oral, nor because it was given at one time and the instruction with which it conflicted was given first before the jury retired the first time and again before it retired the second time.

The judgment is reversed.

Nourse, J., and Langdon, P. J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on July 18, 1924, and a petition by respondents to have the cause heard in the supreme court,

after judgment in the district court of appeal, was denied by the supreme court on August 15, 1924.

All the Justices concurred, except Lawlor, J., and Seawell, J., who dissented.