[Civ. No. 9112. First Appellate District, Division Two.—April 26, 1934.]

O. B. GIBSON et al., Respondents, v. MAME C. EASLEY, Appellant.

Bohnett, Hill & Cottrell and Charles V. Barfield for Appellant.

Jensen & Holstein for Respondents.

STURTEVANT, J.—The plaintiffs O. B. Gibson and Nell Gibson, his wife, commenced an action to recover damages for personal injuries suffered by them in an automobile accident while they were riding as the guests of the defendant Mame C. Easley and Richard Easley, her husband. The action was tried before the trial court sitting with a jury. The jury returned a verdict in favor of the plaintiffs and the defendant has appealed.

At about 3:30 A. M. on the eighth day of May, 1932, the defendant and her husband called at the residence of the plaintiffs, awakened them and induced them to accompany them on an automobile ride. The defendant did the driving. There was evidence that commencing at a time soon after they entered the automobile the defendant commenced to drive, and continued to drive, at a speed of from 50 to 60 miles an hour over the streets of San Jose, over intersecting streets and passing numerous arterial stop signs without pausing. There was evidence that while so driving the defendant swerved from right to left and back again on several occasions. There was also evidence that at different times one or the other of the passengers riding with the defendant earnestly admonished her to drive more slowly and with greater care, but that the defendant replied she knew what she was doing and continued to drive in the same manner until the accident happened. Finally, when on the right-hand side of the highway and while so swerving to avoid hitting an electric light pole the defendant attempted to swerve to the right, but the car skidded, ran into the light pole, breaking it in two, greatly damaging her car, and severely injuring all of the passengers.

In her first point the defendant attacks several instructions as being incorrect and prejudicial to her interests. Those instructions were as follows:

"V.

"I instruct you that by wilful misconduct is meant the voluntary or self-determined or intentional mismanagement or unlawful behavior.

"VI.

"I hereby charge you that if the defendant, Mame C. Easley, at the time of the accident in question, was traveling upon a public highway, and if at said time she was wilfully driving and operating her automobile at a high and excessive rate of speed in excess of the speed limit allowed by law, and if you find that such conduct on the part of the said defendant was the proximate cause of the accident, then said defendant was guilty of wilful misconduct.

"VII.

"I instruct you that if the defendant, Mame C. Easley, at the time of the accident and immediately prior thereto, was either wilfully driving and operating her automobile at a high and excessive rate of speed, in excess of the speed limit allowed by law, or was wilfully causing said automobile to swerve from one side of the highway to the other side, that she was guilty of wilful misconduct in either event, and it is not necessary for the plaintiffs to show that said defendant intended to or wilfully caused the collision in this case.

"IX.

"I hereby charge you that if you find by the preponderance of the evidence that the defendant, Mame C. Easley, at the time of the accident either wilfully drove and operated her automobile at a high and excessive rate of speed, in excess of the speed limit allowed by law, or that she wilfully caused said automobile to swerve from one side of the highway to the other side, and that either said swerving or said speed was the proximate cause of the accident, then in either event said defendant was guilty of wilful misconduct, and it is not necessary for the plaintiffs to make any further showing of wilful misconduct to be entitled to recover." The defendant asserts that the instructions, by their general scope, made the acts of driving too fast and of swerving her car, if done intentionally, wilful miscon-

duct. But, as she asserts, further elements should have been inserted in the instructions. She cites, among other cases, *Howard* v. *Howard*, 132 Cal. App. 124 [22 Pac. (2d) 279], in which the Supreme Court denied a hearing. It was decided several months after the trial in the instant case. In the Howard case, *supra,* at page 129, the court said: "But wilful misconduct as used in this statute means neither the sort of misconduct involved in any negligence nor the mere intent to do the act which constitutes negligence. *Wilful misconduct implies at least the intentional doing of something either with a knowledge that serious injury is a probable (as distinguished from a possible) result, or the intentional doing of an act with a wanton and reckless disregard of its possible result.*" (Italics ours.) Whatever merit there may be in the point, the defendant is in no position to present it. She asked, and the trial court gave, two instructions on the same subjects:

## "XVIII.

"You are instructed that the term 'wilful misconduct' is synonymous with 'intentional misconduct' and therefore, if you find from the evidence in this case that the defendant, Mame C. Easley, did not intentionally commit any act of omission or commission which proximately caused injury to the plaintiffs, then if you so find, I instruct you that she would not be guilty of wilful misconduct and in which case your verdict must be for the defendant, Mame C. Easley.

## "XIX.

"Wilful misconduct arises from the spontaneous action of the will, and cannot exist without purpose or design. You should not confuse wilful misconduct with negligence or gross negligence, as there is a clear distinction between the two terms. Wilful misconduct means something different from, and more than, negligence, however gross, and if you should find from the evidence in this case that the defendant was not guilty of wilful misconduct, as alleged in the complaint, your verdict must be in her favor, even though you may find from the evidence that she may have been guilty of negligence, or even gross negligence."

It is patent that those instructions stated substantially the same rule as the instructions complained of. Both sets omitted the factor which we have italicized. . The defendant did not ask for any other instruction on the meaning of the

expression "wilful misconduct". ██ She made a motion for a nonsuit, but she did not therein make the contention she now makes. The proceedings were as follows: "By Mr. Barfield: May it please the court, the defendant at this time moves for a nonsuit upon the ground that the plaintiffs have failed to prove by any evidence, inference or otherwise, that the defendant in this case committed any act whatsoever intentionally or wilfully; there is no evidence of any wilful misconduct in this case . . . and further, our ground of motion is that it appears from the evidence of the plaintiffs themselves that they had been drinking liquor before this accident. It further appears that by any reasonable view that can be taken of this situation here, these plaintiffs participated in festivities and a party prior to this accident, and that they are guilty of contributory negligence. . . . Where one voluntarily participates in midnight festivities, I submit in the condition of this case the court must pass ultimately as a thirteenth juror as to whether or not there is any evidence of wilful misconduct. . . . Calling your Honor's attention to the case in *Hermance* v. *Clemow*, 111 Cal., page. 13 [295 Pac. 70], the Supreme Court points out that wilful misconduct must be something in excess of even gross negligence . . . there must be evidence of intention. By the Court: That is a matter for the jury. There is the protesting by Mrs. Gibson, wasn't that wilful misconduct driving at such excessive speed? That is a very interesting question of fact that the jury should pass upon, not the court. We must consider everything in favor of the plaintiffs in passing on a nonsuit. I will deny the motion." In other words, at no place in the record is it shown that she ever made the point in the trial court. She should have done so, and she may not now change her theory of the case and for the first time present her theory in a court of review. ██ But, the defendant argues, under such an interpretation of the record the jury may have based its verdict on mere negligence or gross negligence. The trial court instructed the jury in most explicit terms that it should not do so. (Defendant's Instruction No. XV.) That admonition was repeated. (Defendant's Instruction No. XIX.) Finally, as a closing admonition, the jury was told that if the defendant was not guilty of wilful misconduct the jury should return a verdict for the defendant. In *Durkee* v.

*Chino Land & Water Co.,* 151 Cal. 561, at page 571 [91 Pac. 389], the court said: "As the rule adopted by plaintiff for the measurement of damages was acquiesced in by defendant, no objection raised by it to the competency of the evidence given under it, and as that evidence fully sustains the findings, the defendant is concluded by its conduct from raising any question of the sufficiency of the evidence when tested by some other and different rule than the one adopted and acquiesced in upon the trial. In this view, whether the rule adopted for the ascertainment of damages was the correct one or not, we are not called upon to consider. It was the one adopted and acquiesced in by both parties and followed by the court, and neither of the litigants can be heard after judgment to question its correctness or the competency of the evidence introduced under it." (Citing cases.) In the case of *Sommer* v. *Martin,* 55 Cal. App. 603 [204 Pac. 33], the action was one to recover for personal injuries caused by the alleged negligence of the defendant. In the trial court the plaintiff, without objection, introduced in evidence a local traffic ordinance. Both parties tried the case on the theory that said ordinance was the governing law. After the trial and before the hearing of the case on appeal the decision entitled *Ex parte Daniels,* 183 Cal. 636 [192 Pac. 442, 21 A. L. R. 1172], was handed down. Later the defendant Martin sought to change his theory of the law and attempted to rely on *Ex parte Daniels, supra.* This court held he could not do so and on page 610 quoted with approval as follows: " 'Besides, it is due to the judge, in furtherance of justice, that his attention should be called to the legal principle which is claimed to be violated by the admission or rejection of the evidence. In the hurry of the trial many things may be, and are, overlooked which would readily have been rectified had attention been called to them. The law casts upon the party the duty of looking after his legal rights and of calling the judge's attention to any infringement of them. If any other rule were to obtain, the party would in most cases be careful to be silent as to his objections until it would be too late to obviate them, and the result would be that few judgments would stand the test of an appeal.' (1 Hayne on New Trial and Appeal, sec. 103.) In the case of *Horace F. Wood Transfer Co.* v. *Shelton,* 180 Ind. 273, 279 [101 N. E. 718, 720], the court

said: 'In attacking instructions Nos. 7, 9, 13, and 14 given by the court on its own motion, appellant seeks to question the validity of an ordinance of the city of Indianapolis providing a speed limit for automobiles within a certain prescribed territory in said city. During the progress of the trial the attorney for appellees read in evidence the ordinance in question and asked, "There is no question about the validity and force of this?" To which one of the attorneys for the appellant replied: "Oh, no." Later it was suggested that a subsequent attack might be made on the ordinance in case of appeal, to which the attorney stated: "That is an immaterial point. We will let it go just the way it is." It is a familiar rule that a party is restricted on appeal to the theory adopted at the trial and "When a theory is thus adopted, and acted upon below, with the concurrence of both parties, a judgment ought not be reversed because the court instructs the jury in accordance with it."'" In *Checote* v. *Hardridge*, 31 Okl. 742 [123 Pac. 846], the Supreme Court of Oklahoma was considering the record in a case involving the devolution of title to lands in that state. At page 849 the court said: "The case, however, seems to have been tried in the lower court upon the theory that the Creek law applied to the entire devolution, and, if so, the parties will not be permitted to change front in this court, and take a new hold on another theory. This has been the uniform holding of this court." (Citing cases.) The authorities we have cited can be multiplied many times. (2 Cal. Jur. 237; 3 C. J. 718.) ▆ In the instant case, although there was a conflict in the evidence, the evidence was sufficient to support the verdict. Under these circumstances unless after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice, the judgment should not be reversed. (Const., art. VI, sec. 4½.) We are unable to say that there has been a miscarriage of justice. That is so because there was evidence from which the jury could have found, and from its verdict it must be assumed it did find, that the defendant intentionally did the acts alleged in the complaint either with a knowledge that serious injury was a probable (as distinguished from a possible) result or with a wanton or reckless disregard of their possible result. There being evidence

amply sufficient to sustain a verdict of wilful misconduct when properly defined we are of the view that in the circumstances of this case the judgment should not be reversed because of the instructions given at the request of the plaintiff. (*Gerdes et al.* v. *Pacific Gas & Electric Co.*, 219 Cal. 459 [27 Pac. (2d) 365, 90 A. L. R. 1071].)

The defendant attacks instructions number XII and number XIV. The attack on each is that each one in effect told the jury that the defendant was guilty of wilful misconduct. This attack is based on the fact that the words "if any" were not inserted after "wilful misconduct", and therefore the trial court took from the jury the power to determine for itself whether the defendant's act was, or was not, wilful misconduct. Speaking of a similar attack, in the case of *Forrest* v. *Pickwick Stages System*, 101 Cal. App. 426, at page 434 [281 Pac. 723], Mr. Presiding Justice Koford, speaking for this court said: "Appellants claim this instruction assumed as a fact that there was an absence of all evidence upon the subjects mentioned. If so, it is very slight and indirect and is cured by other instructions upon contributory negligence. In such instruction the expression 'in the absence of all evidence to show' should be understood to mean 'if the jury finds an absence of all evidence' and it is not an assumption of fact which is prohibited the trial judge. It is like defining negligence and contributory negligence. That does not assume negligence or contributory negligence to be an established fact in the case." That comment is particularly applicable to this record. That the trial court in the instant case did not assume the defendant was guilty of wilful misconduct is shown in instruction XV which immediately followed and which, among other things, said: "You are instructed that if you find from the evidence in this case that the defendant Mame C. Easley was not guilty of any wilful misconduct as alleged in the complaint, then I instruct you that you need consider nothing further, and if you so find your verdict must be in favor of defendant Mame C. Easley."

It is next claimed that the evidence in this case was wholly insufficient to support the verdict. In support of the point the defendant quotes a considerable portion of the evidence. Thereupon she states: "Taking the above evidence in the light most favorable to plaintiffs and respond-

ents, there is no evidence whatever that the defendant either committed a wilful or intentional injury upon the plaintiffs or that she was guilty of a conscious failure to act to the end of averting injury, with knowledge of the peril to be apprehended from such failure." It is a sufficient reply to state that the evidence introduced contained some conflicts. For instance, the defendant as a witness in her own behalf claimed that immediately before the accident she made frantic efforts to avoid hitting the pole and that she did not deliberately drive off of the highway nor did she wilfully cause injuries to the plaintiffs or the death of her husband. If in reaching its verdict the jury determined that the testimony of the defendant was insufficient to exonerate her, or if it determined that some of her testimony was not true, the jury was entirely within its rights.

The fourth point made by the defendant is that the amended complaint failed to state a cause of action. The amended complaint was framed in two counts. The first count was complete in itself alleging injuries sustained by Mr. Gibson. The second count was in all respects identical with the first count excepting that it alleged the injuries sustained by Mrs. Gibson. The charging part of each count was as follows: "That on or about the 8th day of May, 1932, while the plaintiff, O. B. Gibson, was so riding in that certain automobile being driven, operated and propelled by the defendant above named in a general southerly direction on and upon that certain public highway in the county of Santa Clara, state of California, known as McLaughlan Avenue, near the intersection of that certain public highway in said county and state known as Tully Road, the defendant, above named, so wilfully and recklessly drove, operated and propelled said automobile in such a manner as to be guilty of wilful misconduct as follows, to-wit: defendant so propelled said automobile as to cause the same to swerve from one side of the highway to the other side wilfully drove said automobile at a high and excessive rate of speed, to-wit: approximately fifty to sixty miles per hour and said defendant, while so driving said automobile at such high and excessive rate of speed and while causing the same to swerve from one side of the highway to the other side, wilfully caused the same to run off of the left side of the pavement and onto the gravel or dirt roadway and said defendant

drove and propelled said automobile back onto her right hand side of the paved portion of said highway and off of the right hand side of said pavement so as to cause the same to collide and overturn against a certain Pacific Gas and Electric Company pole on the westerly side of said Mc-Laughlan avenue, violently hurling the said plaintiff O. B. Gibson, from said automobile and onto the ground or gravel portion of said roadway . . . '' While the pleading is not a model it may not be said to be insufficient. In principle, we think that *Stein* v. *United Railroads*, 159 Cal. 368 [113 Pac. 663], is in point. On page 370 the court quoted with approval: ''It is well settled that negligence may be charged in general terms; that is, what was done being stated, it is sufficient to say it was negligently done, without stating the particular omission which rendered the act negligent. But it must appear from the facts averred that the negligence caused or contributed to the injury.'' While this case does not sound in negligence, it does sound in wilfulness. As it is sufficient to state that a certain act was done negligently so we think it is sufficient to state that a certain act was done wilfully. In *Esrey* v. *Southern Pac. Co.*, 103 Cal. 541 [37 Pac. 500], the plaintiff was injured in a railroad accident. In her complaint she charged that the defendant acted negligently. Later she amended her pleading by alleging that the defendant acted wilfully. On appeal it was claimed that the amendment was improperly allowed. The court held otherwise. On page 546 it said: ''The amendment pertains wholly to the manner in which the injury was inflicted, and actual damage is all that is sought to be recovered. The gist of the action is a claim of actual damages for personal injuries inflicted by defendant's moving cars, and these are the facts found stated in the original complaint.'' In the case of *Kramm* v. *Stockton Electric R. R. Co.*, 3 Cal. App. 606 [86 Pac. 738, 903], the plaintiff had charged that the act of the defendant was done ''carelessly, negligently, wilfully, and wantonly''. On appeal it was claimed that the complaint did not state a cause of action. On page 618 the court said: ''The claim that there cannot be carelessness, negligence, wilfulness and wantonness at the same time cannot be maintained. It is true that carelessness does not necessarily imply wantonness, but as wantonness may exist without intent to injure, it certainly

may imply carelessness. To do an act in reckless disregard of consequences, though not intending thereby to do injury, is to do the act in a careless and negligent manner and would also, under some circumstances, be wantonly done. It was not necessary to sustain the action that the act of defendant be shown to have been wantonly and wilfully, as well as carelessly and negligently done. The fact that the manner of doing the act was charged in the conjunctive did not deprive plaintiff of the right to show what happened and to recover accordingly. We violate no rule of pleading in holding that the complaint was sufficient as we understand the case of *Esrey* v. *Southern Pacific Co.*, 103 Cal. 541 [37 Pac. 500].''

But the defendant's contention on this point must fall even though it might at one time have had merit. To the amended complaint no demurrer was interposed. The parties went to trial and both parties and the trial court treated the pleadings as containing a proper allegation of the wilful misconduct of the defendant. Under all of the circumstances the defendant may not, in a court of review, for the first time present the contention which she now makes. (*McDougald* v. *Hulet*, 132 Cal. 154 [64 Pac. 278]; *Kurokawa* v. *Saroyan*, 95 Cal. App. 772, 775 [273 Pac. 613]; *Berger* v. *St. Louis Storage & Commission Co.*, 136 Mo. App. 36 [116 S. W. 444].)

The last point made by the defendant is that the trial court erred in denying her motion for a new trial. The original record did not disclose that such a motion was made. When the defendant filed a petition for a rehearing she asked to be heard on the question as to whether she had, in the trial court, presented the contention which she now makes as to the proper definition of the expression ''wilful misconduct'' as the same is used in the guest statute; and she also asked permission to suggest a diminution of the record. As neither matter had been discussed in the briefs both requests were granted. The record has now been completed by a supplemental transcript which shows that a motion for a new trial was made on each and all of the statutory grounds and that the motion was denied. What points were made in preventing the motion does not appear, nor do any other proceedings had on the motion appear. On the record as so

amended it may not be said that the court erred in denying the motion.

The judgment is affirmed.

Nourse, P. J., concurred.

SPENCE, J., Dissenting.—I dissent. The effect of the instructions given by the trial court at the request of respondents was to advise the jury that anyone who voluntarily drives an automobile at a speed prohibited by law is guilty of wilful misconduct within the meaning of the guest statute. There is no doubt that these instructions were erroneous. (*Forsman* v. *Colton,* 136 Cal. App. 97 [28 Pac. (2d) 429]; *Olson* v. *Gay,* 135 Cal. App. 726 [27 Pac. (2d) 922]; *Turner* v. *Standard Oil Co. of California,* 134 Cal. App. 622 [25 Pac. (2d) 988]; *Walker* v. *Bacon,* 132 Cal. App. 625 [23 Pac. (2d) 520]; *Howard* v. *Howard,* 132 Cal. App. 124 [22 Pac. (2d) 279].) The error is apparently conceded in the majority opinion, but it is there held that appellant is in no position to complain of the giving of said instructions. With this conclusion I cannot agree.

The trial of the cause was had before there had been any judicial determination of the meaning of wilful misconduct as that term is employed in the guest statute. Throughout the trial the parties proceeded upon entirely different theories. Respondents took the position that any voluntary violation of a statute was sufficient. The trial court adopted this view. Appellant, on the other hand, claimed throughout the trial that respondents were required to show that appellant had wilfully injured respondent or had wilfully run off the road and into the pole. This extreme view finds some support in the minority opinion in *Walker* v. *Bacon, supra,* but neither the position taken by the respondents nor the position taken by appellant at the trial can be sustained in view of the above-mentioned decisions establishing the meaning of wilful misconduct as used in said statute.

In the case of *Turner* v. *Standard Oil Co. of California, supra,* the court defined wilful misconduct as follows: ''Willful misconduct, within the meaning of this statute, may then be defined as *intentionally* doing something in the operation of a motor vehicle which should not be done or *intentionally* failing to do something which should be done

*under circumstances disclosing knowledge, express or to be implied, that an injury to a guest will be a probable result.''* (Italics ours.) This definition appears to be sound in the light of the legislative history of the guest statute and it finds approval in the other authorities above mentioned. While the intentional violation of a statute constitutes negligence and may constitute gross negligence or even wilful misconduct *under certain circumstances,* wilful misconduct contemplates something more than a mere intentional violation of one of our numerous statutory traffic regulations. To permit recovery on the theory of wilful misconduct upon any showing short of that indicated in the approved definition would result in the complete nullification of the obvious attempt on the part of the legislature to deny recovery to guests in cases involving mere negligence or even gross negligence. The rule may now be said to be established that even the wilful or intentional violation of a statute will not suffice unless the circumstances warrant the inference that the driver knew that injury to his guest would be the probable result rather than a mere possibility. Wilful misconduct, as thus defined, involves conduct which is inherently wrong because the act is *intentionally* done or the omission is *intentionally* made with *knowledge of the probability of injury to the guest* and it eliminates from its scope conduct which is wrong solely because of the violation, intentional or otherwise, of some traffic regulation. Invoking certain terms frequently employed with respect to public offenses, it may be said that wilful misconduct implies conduct which is *malum in se* because of such intent coupled with such knowledge, rather than conduct which is merely *malum prohibitum.*

There can be little doubt that the giving of the erroneous instructions was prejudicial. It may be conceded that the testimony set forth in the majority opinion was sufficient to warrant a finding of wilful misconduct, but the evidence was highly conflicting in every portion thereof which had any tendency to show wilful misconduct. The evidence offered by appellant showed among other things that prior to the accident she was driving on the right side of the road at the rate of 40 to 45 miles per hour; that she did not swerve the car from one side of the road to the other; that nothing was said by anyone about her speed or manner of

driving; that immediately before the accident someone in the back seat said something which she turned her head to hear; that an instant later she saw the pole looming in front of her, whereupon she pulled the wheel as hard as she could to the left to avoid it, but the car skidded and the right side thereof struck the pole. It is entirely probable that the jury based its finding of wilful misconduct solely upon the testimony offered by respondents relating to speed and under these circumstances it cannot be said that the giving of the erroneous instructions was not prejudicial. In *Walker* v. *Bacon, supra,* the cause was reversed because of the instructions and in that case the instructions were far more favorable to the defendant than were the instructions in the present case.

The majority opinion holds that appellant may not complain of the error in these instructions because she did not present the point in the trial court and may not now change her theory of the case. A reading of the record shows that appellant frequently made her point in the trial court and argued her motion for nonsuit upon the theory that there was no evidence whatever of any wilful misconduct. The argument on the motion is not set forth in full, but the record shows that after appellant made her point, argument by counsel followed. I find no change in the record or on this appeal of appellant's theory of her case. Instructions 18 and 19, proposed by appellant and given by the trial court, were purely defensive instructions and I cannot agree with the majority opinion that said instructions were substantially the same as the instructions given at the request of respondents. As above stated, the effect of the challenged instructions was to tell the jury that if appellant voluntarily drove at a speed prohibited by law, it was not necessary to make any further showing of wilful misconduct. In other words, a showing of negligence was thereby declared sufficient to impose liability. On the other hand, the jury was told in instruction 19 that neither negligence nor even gross negligence was sufficient. The portion of instruction 19 just mentioned was a correct statement of the law and was in direct conflict with the whole tenor of the several erroneous instructions. The remaining portions of instructions 18 and 19 were not as clear as they might have been, but said portions were negative in form and told the jury in effect

that wilful misconduct could not exist without intent, purpose and design. Appellant cannot well be criticised for her failure to propose an affirmative instruction containing an accurate definition of wilful misconduct when the meaning of that term, as used in the guest statute, was in doubt until the subsequent determination thereof by the appellate courts. Under the circumstances it seems to me that the judgment should not be permitted to stand when it is entirely probable that it resulted from the erroneous instructions which, contrary to the intention of the legislature, made negligence rather than wilful misconduct the basis of recovery.

It is no answer, as stated in the majority opinion, to point to the instructions which told the jury that it was insufficient to show mere negligence or even gross negligence on the part of appellant and that the verdict should be in appellant's favor unless it appeared that she was guilty of wilful misconduct. These instructions, when considered with the other instructions given, simply made confusion worse confounded. The jury was not guided by any correct definition of wilful misconduct, but, on the contrary, the jury was told in effect in several instructions that acts which in law constitute mere negligence were sufficient to show wilful misconduct and the jury was further specifically told that it was not necessary for respondents to "make any further showing of willful misconduct to be entitled to recover".

Certain authorities are cited in the majority opinion on the subject of change of theory on appeal. I do not believe that these authorities are in point. In each of the cases cited the theory repudiated by appellant on appeal was the theory adopted and acquiesced in by both parties in the trial court. In the present case appellant did not adopt or acquiesce in the theory of respondents in the trial court, but, on the contrary, appellant strenuously argued against respondents' theory throughout the trial. The mere fact that in the trial court appellant adopted a theory in line with the views expressed in the minority opinion in *Walker* v. *Bacon, supra,* which theory was more favorable to appellant than any theory which the rules laid down in the above-mentioned authorities would permit, should not be held to preclude appellant from adopting and urging the definition of wilful misconduct which has since been settled by said authorities.

Section 4½ of article VI of the Constitution is also cited in support of the conclusion reached in the majority opinion, but I do not believe that said section can properly be applied to a case where the evidence is highly conflicting, where the instructions are irreconcilable and where it appears probable that the judgment resulted from the giving of the erroneous instructions. (*Starr* v. *Los Angeles Ry. Corp.*, 187 Cal. 270 [201 Pac. 599]; *Hesler* v. *California Hospital Co.*, 178 Cal. 764 [174 Pac. 654]; *White* v. *Davis*, 103 Cal. App. 531 [284 Pac. 1086]; *Zolkoske* v. *United States Farm & Land Co.*, 72 Cal. App. 63 [236 Pac. 344]; *Galloway* v. *United Railroads*, 69 Cal. App. 770 [232 Pac. 491]; *Alcamisi* v. *Market Street Ry. Co.*, 67 Cal. App. 710 [228 Pac. 410].)

In my opinion the judgment should be reversed.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 25, 1934.

Preston, J., dissented.