[Civ. No. 3315. Fourth Dist. June 14, 1944.]

G. M. HUNTON, Respondent, v. CALIFORNIA PORT-
LAND CEMENT COMPANY (a Corporation) et al.,
Appellants.

Gray, Cary, Ames and Driscoll and John M. Cranston for Appellants.

Nottbusch & Nottbusch and Head, Wellington & Jacobs for Respondent.

BARNARD, P. J.—This is an action for damages. A heavily loaded truck, owned by the plaintiff and driven by his minor son, collided with another heavily loaded truck owned and driven by the defendants, respectively, when the latter truck was stopped on a paved highway which was being widened. The death of the plaintiff's son resulted from this collision. On a former appeal, a jury having returned a verdict for $6,500 in favor of the plaintiff, it was held that the question of negligence on the part of the defendants was one of fact for the jury. (*Hunton* v. *California Portland Cement Co.*, 50 Cal.App.2d 684 [123 P.2d 947].) The general facts are stated in that opinion and need not be here repeated. On a retrial of the action a jury returned a verdict for the plaintiff in the sum of $41,592.78, being $40,000 for the death of the son and $1,592.78 on a second cause of action for damage to the truck. In connection with a motion for a new trial the court reduced the $40,000 item to $18,000, which reduction was accepted by the plaintiff, and the defendants have appealed from the judgment which followed.

It is first contended that the court gave three erroneous instructions, that while the court corrected two of these instructions before a verdict was returned it failed to correct the third, and that this left a conflict between the third instruction and the two corrected instructions. It is then ar-

gued that this judgment must be reversed on the general rule that the giving of contradictory instructions is reversible error where it cannot be told which was followed by the jury. (See *Westberg* v. *Willde,* 14 Cal.2d 360 [94 P.2d 590]; *Anderson* v. *Mothershead,* 19 Cal.App.2d 97 [64 P.2d 995]; *Alcamisi* v. *Market St. Ry. Co.,* 67 Cal.App. 710 [228 P. 410]; *Ferguson* v. *Nakahara,* 43 Cal.App.2d 435 [110 P.2d 1091]; *Van Fleet* v. *Heyler,* 51 Cal.App.2d 719 [125 P.2d 586].)

In the trial of this case an issue was presented as to contributory negligence on the part of the deceased, and a further issue as to such negligence on the part of the respondent himself, involving the condition of the truck and the manner in which it was loaded. In the first of the three instructions referred to, so far as material here, the jury was told, in effect, that if it found contributory negligence on the part of the "plaintiff" its verdict must be for the defendants, but all reference to contributory negligence on the part of the *deceased* was omitted. The second of these instructions told the jury that under certain conditions "the defense of contributory negligence is good as against the father and shall not constitute a bar to recovery by him, . . ."

Before a verdict was returned the error in these two instructions was called to the attention of the court. The judge recalled the jury and ordered the jury to disregard them. In lieu thereof, he then gave two new or correcting instructions, directing the jury to consider these along with all the other instructions previously given. No contention is made that the corrected instructions thus given were erroneous.

It is argued, however, that a third erroneous instruction was not corrected and that contradictory instructions thus appear. The language complained of reads as follows:

"To establish the defence of contributory negligence, the burden is upon the defendant to prove by a preponderance of evidence that the plaintiff was negligent and that such negligence contributed in some degree as a proximate cause of the injury."

It is argued that this was erroneous here because it failed to cover the further issue as to contributory negligence on the part of the deceased. The language thus used was a part of a general instruction on the burden of proof resting upon the plaintiff and the defendants, respectively. After that instruction was given the court gave more specific instruc-

tions relating to the various issues raised, including the issues as to contributory negligence, among which were the two erroneous instructions above mentioned which were corrected in the manner described. Thereafter, the court gave some half dozen specific instructions mentioning the deceased by name, in which the jury was clearly and definitely told that if it found that either the plaintiff or the deceased was guilty of any negligence, however slight, which proximately contributed to the happening of the accident its verdict must be for the defendants, notwithstanding any finding of negligence on their part.

We are unable to agree with appellant's contentions that this portion of an instruction so conflicts with the other instructions that it cannot be told which was followed by the jury, or that instead of being merely incomplete it is so erroneous and conflicting that it cannot be reconciled with the others. It was in no sense a "formula" instruction, and it did not purport to cover all matters necessary to a verdict. It was a part of a general instruction and was followed by specific instructions covering the issues in question, and the two were supplemental rather than contradictory. When the instructions are considered as a whole, as they should be under the circumstances here appearing, neither conflict nor prejudice appears. (*Westover* v. *City of Los Angeles,* 20 Cal.2d 635 [128 P.2d 350]; *Los Angeles Co. F. C. Dist.* v. *Abbot,* 24 Cal.App.2d 728 [76 P.2d 188]; *Barlow* v. *Crome,* 44 Cal.App.2d 356 [112 P.2d 303].)

It is next contended that, in any event, the jury paid no attention to the court's attempted correction of the instructions. In support of this contention it is argued that the court committed prejudicial error in striking the affidavits of three jurors which were offered in support of a motion for a new trial; that these affidavits should have been admitted and considered; and that they establish the fact that the jury based its verdict entirely upon the prior erroneous instructions and refused to consider the corrected instructions later given by the court.

It appears that after the two instructions were corrected, as above indicated, the jury was sent back to the jury room and that it returned a verdict twenty-six minutes later. The jurors were polled and in response to an inquiry as to whether this was their verdict ten of the jurors responded "Yes" and two

responded "No." Two of these affidavits, being those of the two jurors who thus responded "No" are identical and read as follows:

"That she was a juror before whom the above entitled case was tried; that prior to the Court reinstructing the jury and correcting the errors in the instructions, the jury had reached its verdict and had notified the Clerk of the Court that they had so reached a verdict; that subsequent to the reinstruction of the jury by the Court and upon their retirement to the jury room your affiant and several other jurors attempted to reopen the deliberations of the jury and reconsider the case in the light of the new instructions; that the foreman of the jury and others refused to permit the reopening of their deliberations or any discussion of the case in the light of the new and corrected instructions. That no vote was taken on any issue or phase of the case subsequent to the Court's new instructions and your affiant was afforded no opportunity to reconsider her decision or verdict."

The third affidavit, being that of a juror who responded "Yes" when the jury was polled, reads practically the same, but adds the statement "That your affiant's views of the case were changed to some degree by the Court's new instructions but your affiant was afforded no opportunity to reconsider her decision or verdict." While the appellants concede the general rule that affidavits of jurors cannot be considered to show misconduct of the jury it is argued that these affidavits were offered to show an irregularity in the proceedings of the jury, as distinguished from misconduct, and that they were admissible and should have been considered.

The verdict of the jury as rendered was ten to two in favor of the respondent. The effect of the third affidavit was plainly to impeach the verdict of that juror as she had voted in favor of the verdict when the jury was polled. She then had an opportunity to reconsider and change her decision or verdict, and the statement to the contrary in her affidavit is entirely without foundation in fact. A similar situation appears in lesser degree in connection with the other two affidavits. Apparently these two jurors neither changed their minds nor desired to do so after the new instructions were given although they had an opportunity to do so when the jury was polled. The fact that no further vote was taken after the correction of the instructions is not controlling and

the affidavits are entirely insufficient to show, as claimed by the appellants, that the jury paid no attention to the corrected instructions or refused to consider the case in the light thereof. The jury was then out twenty-six minutes. It is not alleged in any of the affidavits that during any discussion which occurred any juror announced a change of mind, or even a doubt, as a result of the new instructions. Even the juror who made the third affidavit, in which she alleged that her views were changed ''to some degree,'' does not allege that she informed the other jurors of this fact, and she refrains from alleging that her views were sufficiently changed to have had any effect upon her verdict. Her vote when the jury was polled would indicate the contrary. It would appear from the affidavits that ten of the jurors had agreed upon a verdict in favor of the respondent before the instructions were corrected. If a verdict had then been returned, in view of the original instructions, there would have been a doubt as to whether it might have been rendered in spite of the fact that it may have been found that the deceased was guilty of contributory negligence. But this error in the instructions was corrected and the jury then returned the same verdict as previously agreed upon. The only reasonable inference from this is that a sufficient number of the jurors remained of the same opinion in the light of the new instructions. In other words, it now appears that these jurors were of the opinion that neither the deceased nor the respondent was guilty of contributory negligence. It cannot be presumed that the jurors would deliberately fail to consider and follow the instructions given by the court, and there is nothing in these affidavits which establishes, or even indicates, that this occurred. Rather than indicating a failure to consider the evidence in the light of the corrected instructions these affidavits indicate that a sufficient number of the jurors had not changed their minds in the light of the new instructions, and that they did not consider it necessary to argue the matter further or to take another vote. This is confirmed by the response made when the jury was polled.

While we think all three affidavits were properly stricken, under rules well established in this state (*People* v. *Gidney,* 10 Cal.2d 138 [73 P.2d 1186]; *Roselle* v. *Beach,* 51 Cal.App. 2d 579 [125 P.2d 77]; *Crabtree* v. *Western Pac. R. Co.,* 33

Cal.App.2d 35 [90 P.2d 835]), it would not affect the result if they were to be considered, since they are insufficient to show that the jury paid no attention to the court's correction of the instructions.

 The last point raised is that the amount of the judgment is excessive with respect to the allowance for the death of the respondent's son. In this regard, the verdict was for $40,000, which was reduced by the court to $18,000, which amount is here claimed to be excessive. The respondent was thirty-nine years old at the time of the accident and the deceased was seventeen years and eight months old. The respondent was engaged in the trucking business and the deceased had quit school without graduating, about two months before the accident. He was assisting his father as "a general utility man" and although he received no salary he was given irregular amounts whenever he needed money. It also appears that the deceased had assisted his father, to a certain extent and at intervals, before he quit school. The respondent states that his pecuniary loss cannot be more forcibly presented than by the remarks of the trial judge after hearing the motion for a new trial. The judge there remarked that this boy was doing work for his parents of the value of $200 a month; that they were reimbursing him, roughly, $80 to $100 a month; that his present employment was of a value to them of about $1,200 a year; and that his minority would have continued for four years, which would amount to $4,800 "assuming those conditions went on." The court then said:

"With gold now at $35.00 an ounce, in place of $17.50 or $18.00, money is worth half of what it was when most of these cases were decided. So this boy was a very unique loss. Considering those various elements, I think that the verdict for general damages should be reduced to $18,000.00."

In thus reasoning, the court jumped from $4,800 to $18,000 because of changed monetary conditions. It may be observed that this change in the value of money not only has a bearing upon the amount of the judgment but is also reflected in the $200 a month valuation placed upon the services of the deceased.

It is well settled that in such a case the recovery must be limited to the financial loss occasioned by the death of the minor. This has usually been held to include the value of services during minority, above any living expense furnished, and some allowance for the pecuniary loss, if any, "of the

comfort, society and protection of a deceased child." In proper cases there has also been included some allowance for contributions during the old age of the parents, where the evidence shows that such could have been reasonably expected. Possibly this latter element is becoming more questionable and less extensive in view of certain well-known modern social theories.

The cases involving the death of a minor recognize that the available means for assessing the amount of pecuniary loss are somewhat inadequate and indefinite and that some discretion must be left to the fact-finding body. But it has been universally held in this state that this discretion must not be abused and that the amount allowed must be reasonably supported by the evidence. A judgment can be held excessive only when it appears so as a matter of law, as being unsupported by the evidence, or when it is such as to suggest at first blush passion, prejudice or corruption on the part of the jury. In recent years, for well-known reasons, somewhat larger judgments have geen sustained than was formerly the case. In *Wiezorek* v. *Ferris,* 176 Cal. 353 [167 P. 234], a judgment for $10,000 was reversed as lacking evidentiary support. The court there said:

"We are of the opinion that the award of ten thousand dollars in this case is excessive. There was no averment or proof of special damage, nor anything to show that the pecuniary value of the child to his parents would have been any greater than that of the ordinary boy of his age. For a number of years to come he would have been a source of expense to them; his pecuniary value to his parents after that could by no permissible rule of compensation have equaled the award made by the jury. Even conceding that the child would have been of help to his parents after minority, which is only conjectural, the verdict is still excessive."

In *O'Meara* v. *Haiden,* 204 Cal. 354 [268 P. 334, 60 A.L.R. 1381], such a judgment was sustained largely on the ground of a change in conditions over those prevailing ten or fifteen years earlier. Since that decision, judgments around $10,000 have been sustained in several such cases. In at least two such cases a judgment for $12,000 has been affirmed, upon the evidence there appearing. (*House* v. *Pacific Greyhound Lines,* 35 Cal.App.2d 336 [95 P.2d 465]; *Rocca* v. *Tuolumne County Elec. etc. Co.,* 76 Cal.App. 569 [245 P. 468].) In

*Wheeler* v. *Brown,* 47 Cal.App.2d 239 [117 P.2d 707], a verdict for $20,000, reduced by the court to $15,000, was held not excessive under the circumstances there appearing. While the facts in this regard are not fully stated it would seem from the opinion that some evidence was received not only as to the age and needs of the mother of the deceased, but also as to contributions made by the son and the possibility and probability of their continuance.

In the instant case, there can be no question that the allowance of $40,000 made by the jury was excessive both as not supported by the evidence and as indicating passion or prejudice. A former jury appraised the same loss, including the value of the truck, at $6,500. The question before us now is whether the court, in reducing this improper verdict, reduced it to an amount which may reasonably be said to be supported by the evidence. There is no definite evidence of pecuniary damage other than with respect to the value of deceased's services during the remainder of his minority, a little over three years. There is no evidence of other pecuniary loss any greater than would be the case with the ordinary boy of that age. An allowance of $3,000 or $4,000 for the services of the deceased during the remainder of his minority would have been liberal. The allowance for the value of his comfort, society and protection must bear a reasonable relation to such pecuniary loss as is shown by the evidence, and could not be very large. (*Zeller* v. *Reid,* 38 Cal.App.2d 622 [101 P.2d 730].) The respondent was 39 years old and engaged in a long established business, and any contributions from the deceased for support in his old age were not only remote and problematical but an allowance therefor in excess of $3,000 or $4,000 would hardly be supported by any evidence. Taking all of these things into consideration we are of the opinion that the amount to which the verdict was reduced by the court is still excessive, and that the largest amount which could be held to find any support in the evidence is $10,000.

It is therefore ordered that: (1) With respect to the second cause of action the judgment is affirmed. (2) If within thirty days after the filing of this opinion the respondent files with the clerk of this court a written agreement to the reduction of the amount of the damage awarded him on the first cause of action, involving the death of his son, to the sum of $10,000 the judgment therefor will be reduced to that amount

and will be affirmed. (3) If no such written agreement be filed within said thirty days that part of the judgment will be reversed and the cause remanded for a new trial on the question of damages alone, with instructions to the trial court to enter judgment for the plaintiff for the amount found on a retrial of that issue.

Marks, J., and Griffin, J., concurred.

On June 29, 1944, the following order was filed:

THE COURT.—The plaintiff and respondent having filed his written consent to a reduction of the amount of the judgment awarded him on the first cause of action, from $18,000 to $10,000, in accordance with our order of June 14, 1944 (*ante*, p. 876 [149 P.2d 471]):

It is ordered that: (1) With respect to the second cause of action the judgment is affirmed. (2) The judgment for damages on the first cause of action is reduced from $18,000 to $10,000, and as so reduced and modified, that part of the judgment is also affirmed. Neither party will recover costs on appeal.