[Crim. No. 2344. Second Appellate District, Division Two.—June 2, 1933.]

THE PEOPLE, Respondent, v. WILLIAM MONDSHINE, Appellant.

Stanley Visel and Peter T. Rice for Appellant.

U. S. Webb, Attorney-General, and James S. Howie, Deputy Attorney-General, for Respondent.

CRAIG, J.—Upon an appeal from judgments and order denying a new trial after conviction upon charges of burning insured property and arson, error is assigned to rulings below allowing the introduction of evidence furnished by an expert witness.

Following proof that a fire discovered in the defendant's store which damaged a stock of silk wearing apparel, had originated in crumpled newspapers deposited about the merchandise, and that the room was not ventilated, an official of the bureau of fire investigation qualified to testify as to the origin of such fires was called on behalf of the People. Said witness was permitted over objections by the defendant to testify as to conditions under which the charges before the jury had arisen, and to experiment for the purpose of showing the effect of insufficient oxygen. He also showed photographs of similar merchandise which had been burned under like circumstances at other buildings which he had investigated, as an illustration "of what happens at fires where there is an insufficiency of oxygen". The jury were admonished that such evidence was merely for the purpose of illustrating the effect of oxygen on fire and for no other purpose. It was objected that the evidence in question was too remote and was not germane to the issues, and the appellant here presents the broad principle, as viewed by his counsel, that photographs of other fires of a known illegal character having no connection with the

defendant or locality are not admissible in an arson case. It requires no discussion to reveal the dissimilarity of cited authorities which hold that such photographs would not be admissible for the purpose of showing a correct representation of the object itself or of an existing condition as to which there is conflicting evidence with relation to the *corpus delicli.* Photographs of other and different bodies or locations or of the same locations under changed conditions in homicide cases and the like have been held inadmissible and calculated to inflame the minds of the jury. But the use of photographs "has been sanctioned for so long a time by the courts that relying upon the accuracy of the representation, the courts not infrequently overlook the fact that a photograph is not evidence of itself, but is used to illustrate evidence. If the fact to be shown by the photograph is not admissible, obviously the photographic representation is not admissible. In this view we are only concerned with the use of photographs as an aid to testimony". (Wharton, Criminal Evidence, 10th ed., vol. 2, p. 1030.) The evidence tended to show that a fire started in a closed room might burn slowly for some hours. Said experiment and photographs were offered and received, not to prove the offense charged, but to illustrate the effect of insufficient oxygen in a closed room which witnesses had testified would retard combustion. "It has been a common thing, in cases of homicide, to make experiments with firearms, to determine the carrying distance, the penetrating force, and the distance to which fire will be carried by firearms of certain pattern and caliber, and to prove the results of such experiments at the trial, as tending to show the guilt or innocence of the accused." (*People* v. *Levine,* 85 Cal. 39 [22 Pac. 969, 24 Pac. 631].) Had evidence of experiments rather than of similar events devoid of human interference been offered its admissibility would find ample support in judicial precedent. Yet its value and weight in either instance would remain for the jury to determine, while the distinction in character arising from its source would be nil. "Although it must appear that the conditions or circumstances were in general the same in the illustrative case and the case in hand . . . the determination whether the conditions were sufficiently similar to make the experiments of any value in aiding the jury is a matter

resting in the sound discretion of the judge. . . . It was said in *Commonwealth* v. *Tucker, supra* (189 Mass. 457, 478 [76 N. E. 127, 7 L. R. A. (N. S.) 1056]), that 'the true ground of admitting the details and ·result of such an experiment is that it may be of assistance, but the question whether it may be or whether it may not lead to too many collateral questions is largely within the discretion of the court.' '' (*Guinan* v. *Famous-Players-Lasky Corp.*, 267 Mass. 501 [167 N. E. 235].) The evidence in controversy was manifestly tendered as an aid to a clear understanding of the testimony, and for that reason was not subject to objection that it was remote or that it misrepresented the conditions at the scene of the alleged offense.

The judgments and order denying a new trial are affirmed.

Works, P. J., and Archbald, J., *pro tem.*, concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 30, 1933.