[Civ. No. 10240.   First Appellate District, Division Two.—February 11, 1937.]

FRANK MILLER, Appellant, v. DOLLAR STEAMSHIP LINES, INC., LTD. (a Corporation), Respondent.

H. W. Hutton for Appellant.

Lillick, Olson, Levy & Geary, Ira S. Lillick and Gilbert C. Wheat for Respondent.

NOURSE, P. J.—Plaintiff sued for personal injuries incurred from a fall when employed in the linen room of the "President Coolidge" while the ship was lying in Hongkong harbor. The cause was tried with a jury, and the defendant had a verdict. The plaintiff has appealed upon typewritten transcripts.

At about 5 o'clock P. M. of June 19, 1933, the plaintiff closed the port holes of the linen room in which he had been working and started to work upon the lock of the door. He asked an attendant to bring a file from his locker, and remembered nothing further. He was found lying in the passageway apparently either overcome by heat or afflicted with a cerebral hemorrhage resulting from a preexisting disease. The plaintiff has contended at all times that his injuries resulted solely from the excessive heat in the linen room caused by a defective or insufficient ventilation system in the ship He testified that he had observed the temperature within the room as high as 142 degrees, and that he had frequently com-

plained to the ship officers about the working conditions in the room. The defendant gave detailed and expert testimony relating to the operation of the ventilating system, the relative temperature of other parts of the ship, the location of the linen room and the adjoining laundry and the location of exhaust ducts in each. Expert testimony was offered tending to prove that the ventilating system was in all respects sufficient and adequate and that it conformed to modern and approved requirements. To this the plaintiff countered that his own observations disclosed excessive heat in the room, and that he had not suffered any former illness. The defendant presented evidence of attending physicians showing that plaintiff's illness was not caused by excessive heat, but by a cerebral hemorrhage, that the form of apoplexy suffered by plaintiff disclosed a condition of cerebral hemorrhage, and was not caused by exposure to heat, and that plaintiff's fall was due to this cerebral hemorrhage and not to his becoming overheated. There was no substantial evidence contradicting this expert testimony, and there is no contention on the part of the plaintiff that the verdict of the jury does not have factual support if the jury believed the evidence offered in support of defendant's theory that plaintiff's injuries were the result of a preexisting disease unknown to defendant, and that the injuries were not caused by any defective or unsafe condition of the place of plaintiff's employment. There is also sufficient evidence to sustain the theory of defendant that the linen room was properly ventilated and in all respects a safe place to work. For these reasons the issues on this appeal are limited to the instructions and the conduct of the trial.

Appellant complains of the instructions given the jury on the issue of assumption of risk. It is his contention at this time that this was not an issue to be left to the jury because the injuries suffered by him were claimed to have been suffered because of the negligent failure of the respondent to provide him a safe place to work. He also contends that the instructions given upon the request of the respondent improperly applied this doctrine in stating that the appellant could be held to have assumed the risk of his place of employment if the dangerous conditions ''were known to the plaintiff or observable to him and that he appreciated or should reasonably have appreciated the same and the danger or ill effects

therefrom''. It is appellant's contention that the instruction should have read, instead of the quoted portion, "is obviously, imminently and inevitably dangerous''. An instruction was given on request of appellant using the words "thoroughly appreciates such danger'', and "the risk must be open and obvious''.

Appellant relies upon the statement in the opinion in *Beadle* v. *Spencer,* 298 U. S. 124 [56 Sup. Ct. 712, 714, 80 L. Ed. 1082], reading "It is unnecessary to repeat here the reasons given in the opinion in *The Arizona, supra* [298 U. S. 110 56 Sup. Ct. 707, 80 L. Ed. 1075[, for our conclusion that assumption of risk is not a defense to a suit brought by a seaman under the Jones Act for negligent failure of the master to provide safe appliances or a safe place in which to work.'' The statement is slightly inaccurate in the broad use of the term "a safe place in which to work'', because, as pointed out in the opinion of Justice Stone in *The Arizona,* 298 U. S. 110 [56 Sup. Ct. 707, 711, 80 L. Ed. 1075], "The seaman assumes the risk *normally incident* to his perilous calling'' but not of the owner's failure "to provide a seaworthy ship and safe appliances''. It would have been more accurate to have said in the Beadle case a *reasonably* or *normally* safe place to work because it is apparent that in different parts of the ship there are places of work normally safe for one class of employees which would be wholly unsafe for those of another class. It may be taken as settled law that, though a seaman does not assume the risk of injury caused by unseaworthiness of the ship or by defective appliances, he does assume those obvious or known risks necessarily and reasonably incident to the peculiar type of his employment. Thus all seamen must be held to assume the risk of seasickness and of extreme climatic conditions incident to the particular voyage when fully known and appreciated by them on entering the employment.

This was the position taken by the appellant in the trial court when he asked an instruction that "assumption of risk is a defense to be passed upon by the jury'' and that "an employee cannot be held to have consented to assume the risk of sickness or injury attendant on unsafe or defective condition of the place in which he works . . . unless he fully understands, comprehends and appreciates the dangers . . . and

there is a voluntary undertaking on his part to assume such dangers''.

Upon the request of the appellant the trial court instructed the jury: ''The mere fact that an employee may have some perception of danger or may know there is some danger will not debar him from recovery for illness or injury caused by a defective place in which to work. Unless he thoroughly appreciates such danger and also the character and extent of the danger, a mere perception of a risk is not sufficient. The risk must be open and obvious.'' Also upon the request of the appellant (with immaterial changes) this instruction was given: ''If you find from the evidence herein, that the linen room of the vessel President Coolidge at the time in question herein was not reasonably safe for a human being to work in, I charge you that a seaman does not assume the risks of negligent acts, if any herein, of fellow employees whereby his place of work on the ship is made unsafe, and the risk of his employment is thereby increased.''

These instructions all definitely related to the issue of assumption of risk, and the appellant thus expressly requested that that issue be passed upon by the jury. It was at his request that the jury was asked to determine whether the linen room was *''reasonably* safe for a human being to work ·in'', and it was at his request that the jury was told that he could not be held to have assumed the risk of the linen room ''unless the unfitness and/or unsuitableness is so obviously open and apparent that the employee knew or must reasonably have known of such unsuitableness or unfitness or danger, if any such there was''.

It was upon the theory that this issue was one for the jury that appellant tried his case, and he cannot at this time claim error in the submission of that issue to the jury or error in the instructions given at the request of his adversary which contained the same advice relative to the measure of proof and the conditions under which the doctrine might be applied. (24 Cal. Jur. 870; *Chase* v. *Southern Pac. Co.*, 119 Cal. App. 341 [6 Pac. (2d) 540]; *Gibson* v. *Easley,* 138 Cal. App. 303 [32 Pac. (2d) 983].) The appellant assails the instruction given at respondent's request advising that appellant assumed the risk of his place of employment if ''such conditions were known to the plaintiff or observable to him and that he appreciated or should reasonably have appreciated

the same and danger or ill effects therefrom''. *Hoogbruin* v. *Atchison etc. Ry. Co.*, 213 Cal. 582 [2 Pac. (2d) 992], is cited to the point that it must appear that work under such conditions must be ''obviously, imminently and inevitably dangerous''. From this it is argued that this instruction and the one relating to the effect of a complaint by the employee and a promise to remedy by the employer placed too heavy a burden upon the appellant. Granting the error in the instructions, they nevertheless carry the same burden to the appellant as that which he assumed in the instructions which he requested. He is, therefore, estopped to claim error in the trial court when such error was invited by his own conduct.

Similar attacks are made upon the modification of certain instructions requested by appellant. The requested instructions read: ''If you find from the evidence herein that by reason of a defective system of circulation of air in the linen room'' then the defendant was liable for the proximate results of sickness or injuries caused thereby. The trial court added the words ''unless you further find that plaintiff assumed the risk of his employment as hereafter explained''. Now the error of applying the assumption of risk doctrine to injuries received in a place of employment having a *defective* system of air circulation may be assumed, but at the trial of the case the appellant did not consider it to be error: The instructions under discussion did, in effect, direct a verdict for the appellant under the conditions therein mentioned, but appellant had also asked the court to instruct the jury that assumption of risk was a defense to be passed on by the jury. Under these circumstances the court could not have consistently omitted the addenda to these instructions which are now under attack because all parties were then agreed that that issue should be left to the jury, and that the defense applied to an unsafe place of employment if the employee ''thoroughly appreciates such danger and also the character and extent of the danger'' and ''voluntarily consents to· work therein and there is a voluntary undertaking on his part to assume such dangers''. These are the words of appellant.

Appellant complains of the instruction advising the jury that if the evidence is found ''as consistent with neglect of care and caution upon the part of the plaintiff as it is with any neglect of care and caution upon the part of the

defendant'' then the plaintiff could not recover. This language was followed immediately by an instruction given at appellant's request fully covering the issue of contributory negligence and the apportionment of damages if such negligence is found. Appellant argues that these instructions are hopelessly in conflict. We do not find them to be in conflict or that there is any error in the one complained of. That one merely advised the jury that the appellant was required to prove his case by a preponderance of the evidence—that if the evidence was equally balanced as to which one of the parties was negligent then appellant could not recover. The instruction following correctly covered the subject when both parties were found to have been negligent.

■ Criticism is also made of the instruction reading in part: ''The evidence produced upon the part of the plaintiff must be of greater weight, quality and convincing effect than that produced by the defendant.'' It is argued that this required the appellant to prove his case ''beyond all reasonable doubt''. *Lawrence* v. *Goodwill*, 44 Cal. App. 440, 451 [186 Pac. 781], is cited. The instruction criticised in that case used the phrase ''such evidence as satisfies and produces conviction''. In *People* v. *Miller*, 171 Cal. 649, 651 [154 Pac. 468], upon which the Lawrence case relied, the instruction used the phrase ''proof that produces conviction''. In both cases it was said that the preponderance of evidence rule did not require proof ''to satisfy and produce conviction'', but ''such evidence as, when weighed with that opposed to it, has more convincing force''. The instruction here complained of fully meets these requirements.

■ It is argued that certain instructions denied recovery to appellant if his injuries were found to have been an aggravation of a preexisting disease. They cannot be so construed. They were directed to the main issue raised by the respondent —that the injuries were caused by and were the direct result of such disease, and were not caused by any negligence of the respondent. On this issue appellant denied at all times that he had suffered from any preexisting disease, but the respondent was entitled to have the issue go to the jury.

■ Appellant asserts that the trial court erred in refusing to give certain instructions proposed by him. He merely copies the proposed instructions—they are not included in the statement of questions involved, are not shown to

have been left uncovered by instructions given, and are not supported by argument or authority. Points raised in this manner do not call for consideration.

During the trial, and over the objection of appellant, the trial court permitted the jury to inspect the vessel. This was done in the presence of the judge, the court attachés and counsel for both parties. The appellant now argues that this was error because the conditions were not the same when the ship visited in the San Francisco harbor as they were in the harbor of Hongkong when the injuries were incurred. Complaint is also made that some of the jurors engaged in conversation and became separated while on the ship. When the view was ordered the trial court announced to the jury that the view was not to be taken for the purpose of determining the condition of the linen room at the time of the injuries "but for the purpose of enabling them to have a picture of what they are talking about in this courtroom rather than taking it from a diagram. That is all." It was then agreed that either counsel, or an expert called by either, might direct the attention of the jury to any particular feature observable without further comment.. This procedure was followed, and no objection was made to any occurrence either during the viewing of the ship or when the trial was resumed in court. This was the time to make the objection, and none having been made then, it is not a ground for reversal. (*Los Angeles* v. *Morris,* 74 Cal. App. 473, 483 [241 Pac. (2d) 409].)

Objection is made to the admission of evidence of the temperatures of the linen room, the engine room, and of other points on the ship. It is argued that some of this data was taken at times too remote and under changed conditions. After his injury the appellant returned to the same employment, and was working in the same linen room when this data was secured. He testified that he did not find conditions any better than they were at the time of his injuries. This evidence was all for the purpose of enabling the jury to estimate the probable temperature of the linen room at the time of the injuries and to combat the highly improbable testimony of the appellant that it reached 142 degrees at that time. The question of the similarity of conditions and the remoteness of experiments offered is one lying in the discretion of the trial court, and we do not find any error in the admission of such

evidence here. (*People* v. *Mondshine,* 132 Cal. App. 395, 398 [22 Pac. (2d) 779].)

The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 12, 1937.