[L. A. No. 3589. Department One.—June 9, 1916.]

JAMES EDWARD DICKINSON, as Administrator of the Estate of Samuel Dickinson, Deceased, Respondent, v. SOUTHERN PACIFIC COMPANY (a Corporation), et al., Appellants.

JUDICIAL NOTICE—MORTALITY TABLES—EXPECTANCY OF LIFE.—Courts may take judicial notice of the mortality tables in common use for the purpose of ascertaining a person's expectancy of life.

ACTION TO RECOVER FOR DEATH — ELEMENTS OF DAMAGE — ONLY PECUNIARY LOSS RECOVERABLE.—A plaintiff, suing under section 377 of the Code of Civil Procedure to recover for injuries causing death, does not represent the right of action which the deceased would have had if the latter had survived the injury, but can recover only for the pecuniary loss suffered by the plaintiff, or the heirs represented by him, on account of the death of the relative. Sorrow and mental anguish caused by the death are not elements of damage, and nothing can be recovered as a *solatium* for wounded feelings.

ID.—LOSS OF COMFORT AND SOCIETY.—In such cases the jury may consider the relations which existed between the heirs and the deceased during the lifetime of the latter, and the loss of comfort, society, support, and protection of the deceased. But the loss of comfort and society are to be considered only with reference to the value of the life of the deceased and the pecuniary loss to the plaintiff caused by the death.

ID.—EXCESSIVE VERDICT.—A verdict of ten thousand dollars for the death of a man almost seventy-nine years of age, who was survived by a wife, two sons, two daughters, and several grandchildren, and whose earnings would have amounted to less than three thousand five hundred dollars during the remainder of his probable life, is excessive.

APPEAL from a judgment of the Superior Court of Kern County, and from an order refusing a new trial. Paul W. Bennett, Judge.

The facts are stated in the opinion of the court.

Borton & Theile, for Appellants.

James Donovan, Bell & Ingalls, H. A. Ingalls, and Jas. W. Bell, for Respondent.

SLOSS, J.—Action to recover damages for the alleged negligent killing of plaintiff's intestate. The defendants are

railway corporations, the one owning and the other operating under lease a line of steam railway running through the city of Bakersfield. A train of said line ran into a buggy which the decedent, Samuel Dickinson, was driving, and Dickinson was instantly killed.

Judgment went in favor of the plaintiff for $10,230. From this judgment, and from an order denying their motion for a new trial, the defendants appeal.

There is no room to doubt that the evidence warranted the jury in finding that there had been negligence in the operation of the train. The appellants contend, however, that the decedent was himself guilty of contributory negligence, and that for this reason their motion for a nonsuit should have been granted.

Chester Avenue, the street upon which Samuel Dickinson was driving, runs north and south in the city of Bakersfield. It is intersected at right angles by Thirty-third Street. The railway track runs in an easterly and westerly direction and crosses Chester Avenue at Thirty-third Street. The trains coming over the track toward Bakersfield approach from the west. At Chester Avenue there are three tracks; a main line and two sidings. The main line is the most southerly, and it was upon this track that the train which struck Dickinson was running. Dickinson was coming along Chester Avenue from the north. The accident occurred in the daytime. The appellants rely upon the rule, well established by many decisions of this court, that the track of a steam railway is in itself "a sign of danger, and one intending to cross must avail himself of every opportunity to look and listen for approaching trains." (*Herbert* v. *Southern Pacific Co.*, 121 Cal. 228, [53 Pac. 651]; *Holmes* v. *South Pacific Coast Ry. Co.*, 97 Cal. 161, 167, [31 Pac. 834]; *Green* v. *Los Angeles etc. Ry. Co.*, 143 Cal. 31, 37, [101 Am. St. Rep. 68, 76 Pac. 719]; *Hutson* v. *Southern Cal. Ry. Co.*, 150 Cal. 701, 704, [89 Pac. 1093]; *Griffin* v. *San Pedro etc. Ry. Co.*, 170 Cal. 772, [L. R. A. 1916A, 842, 151 Pac. 282].) Of course, where the circumstances are such that the injured person could not, by the exercise of his faculties of sight and hearing, have discovered the approach of a train in time to avoid injury, his failure to look or to listen will not preclude recovery. (*Martin* v. *Southern Pacific Co.*, 150 Cal. 124, [88 Pac. 701]; *Eaton* v. *Southern Pacific Co.*, 22 Cal. App. 461,

[134 Pac. 801].) Whether the case be one in which the conditions force the conclusion that the injured person did not exercise reasonable care for his own safety, or be one in which it is open to a jury to find either way on the issue of contributory negligence, is sometimes a close question. In *Griffin* v. *San Pedro etc. Ry. Co.*, 170 Cal. 772, [L. R. A. 1916A, 842, 151 Pac. 282], it was held by a majority of the court that the case fell within the first category, but there was a division of opinion on the point. The case at bar presents a situation somewhat similar to that before the court in the Griffin case. On the northwesterly corner of Chester Avenue and Thirty-third Street was an ice plant, and the noise of the machinery operated in this plant made it difficult, if not impossible, to hear approaching trains. On the southerly side of this building was an ice-loading rack, and this, together with two freight-cars which were standing on the most northerly of the three tracks and extending well into Chester Avenue, obstructed the view of one approaching the crossing until he was almost on the second of the three tracks. We do not find it necessary to decide whether the evidence in this case was such as to compel the conclusion that the deceased, after reaching the point at which he had a view along the main track, would still, by the exercise of reasonable care, have been able to stop his horse and thus avoid a collision. The judgment must be reversed on a different ground, and as the evidence may not be precisely the same on a second trial, we think it better to leave the court below unhampered in passing upon the question whether contributory negligence is, at such trial, established as a matter of law.

One of the grounds upon which reversal is sought is that the damages awarded are excessive. In addition to the recovery sought on account of the death of Samuel Dickinson, the plaintiff alleged in his complaint that he had suffered a loss of $230 through destruction of the horse, the harness, and the buggy. The verdict was for $10,230. Plainly, ten thousand dollars of this sum was awarded for the death of plaintiff's intestate.

It appeared in the evidence that at the time of the accident Samuel Dickinson was of the age of seventy-eight years and nine months. He was survived by a wife, two sons, two daughters, and eight grandchildren. One of the grandchildren was living with Samuel Dickinson and his wife.

Dickinson's occupation was that of a farmer. The only evidence of his earnings in that calling was that of the plaintiff, his son, who testified that the income of the decedent from his farm was one thousand dollars a year, and that the rental value of a place like that which he occupied would be about three hundred dollars a year. This left a return, from his labor and personal efforts, of seven hundred dollars per year, but this, as the witness testified, did not take into account any deduction for living expenses. The widow testified that her husband had been in good health and able to do a good day's work, that her life with him was pleasant, his habits good, and his companionship pleasant and agreeable.

There was no evidence offered to show the expectancy of life of a man of Dickinson's age. The courts may, however, take judicial notice of the mortality tables in common use. (*Gordon* v. *Tweedy*, 74 Ala. 232, [49 Am. Rep. 813] ; *Louisville etc. Co.* v. *Miller,* 141 Ind. 533, [37 N. E. 343] ; *Atchison etc. Co.* v. *Ryan,* 62 Kan. 682, [64 Pac. 603].) An examination of such tables shows that Samuel Dickinson's expectancy of life was about four and eight-tenths years.

This being the showing, the award of ten thousand dollars was palpably in excess of any sum which the jury was authorized to find as the damage resulting to the heirs of Samuel Dickinson by reason of his death.

The action is based on section 377 of the Code of Civil Procedure. At common law no remedy was given for injuries causing death. The right of the survivors to recover in such cases is purely statutory. It is thoroughly settled by many decisions in this state and elsewhere that a plaintiff, suing under a statute like section 377, ''does not represent the right of action which the deceased would have had if the latter had survived the injury, but can recover only for the pecuniary loss suffered by the plaintiff [or the heirs represented by him] on account of the death of the relative; that sorrow and mental anguish caused by the death are not elements of damage; and that nothing can be recovered as a *solatium* for wounded feelings.'' (*Morgan* v. *Southern Pac. Co.,* 95 Cal. 516, [29 Am. St. Rep. 143, 17 L. R. A. 71, 30 Pac. 603], and cases cited; *Munro* v. *Pacific Coast Dredging Co.,* 84 Cal. 515, [18 Am. St. Rep. 248, 24 Pac. 303] ; *Lange* v. *Schoettler,* 115 Cal. 390, [47 Pac. 139] ; *Burk* v. *Arcata & M. R. R. Co.,* 125 Cal. 364, [73 Am. St. Rep. 52, 57 Pac. 1065] ; *Sneed* v.

*Marysville Gas Co.,* 149 Cal. 710, [87 Pac. 376] ; *Hale* v. *San Bernardino etc. Co.,* 156 Cal. 716, [106 Pac. 83] ; *Diller* v. *Northern California Power Co.,* 162 Cal. 536, [Ann. Cas. 1913D, 908, 123 Pac. 359] ; *Ruiz* v. *Santa Barbara Gas etc. Co.,* 164 Cal. 191, [128 Pac. 330].)

In such cases the jury may consider the relations which existed between the heirs and the deceased during the lifetime of the latter (*Beeson* v. *Green Mountain etc. Min. Co.,* 57 Cal. 20), and the loss of comfort, society, support, and protection of the deceased. (*Munro* v. *Pacific Coast Dredging Co.,* 84 Cal. 515, [18 Am. St. Rep. 248, 24 Pac. 303].) But, as is repeatedly declared in our decisions, the loss of comfort and society are to be considered only "with reference to the value of the life of the deceased and the pecuniary loss to the plaintiff caused by the death." (*Morgan* v. *Southern Pacific Co.,* 95 Cal. 516, [29 Am. St. Rep. 143, 17 L. R. A. 71, 30 Pac. 603].) As was said by Temple, J., in *Lange* v. *Schoettler,* 115 Cal. 390, [47 Pac. 139], referring to the element of deprivation of comfort, society, and protection, "it has always been held that this was in strict accordance with the rule that only the pecuniary value of the life to the relatives could be recovered. The probable comfort, society, and protection of the deceased had some pecuniary value." So in *Hale* v. *San Bernardino etc. Co.,* 156 Cal. 716, [106 Pac. 83], it is stated that "in determining the financial loss to the widow and infant child, resulting from the death of the husband and father, the jury may consider the financial loss accruing from the deprivation of the society, comfort, care, and protection of the deceased, as well as of his support."

It is not possible to measure in exact terms of money the loss which a surviving husband, wife, or child may have sustained through being deprived of the comfort and society of the deceased spouse or parent. For this reason, some play is allowed to the discretion of the jury by the provision of section 377 that such damages may be allowed as under all the circumstances of the case may be just. But in fixing the amount, the jury is always bound by the fundamental rule that *pecuniary* damage is the limit of recovery, and the amount allowed must bear some reasonable relation to the pecuniary loss shown by the evidence.

Here, as we have seen, the deceased had a probable expectancy of less than five years of life. His earnings, assuming that they would all have been applied for the benefit of his family, would have amounted to less than three thousand five hundred dollars, during the probable remaining span of his years. The verdict for ten thousand dollars, can, therefore, be sustained only upon the theory that his life, apart from any contributions he might make from his earnings, had a *pecuniary* value of more than six thousand five hundred dollars to his widow and heirs. There is no evidence to justify such a conclusion. Eliminating, as we must, any consideration of the grief and mental suffering occasioned to the survivors by the death, it is impossible to conceive how the loss of the comfort, society, and protection of the deceased could have had a money value of anything like the amount awarded by the jury. Verdicts have frequently been set aside where the disproportion between the loss proven and the amount awarded was not so great as that which appears here. (*Atlanta & W. P. R. R. Co.* v. *Newton*, 85 Ga. 517, [11 S. E. 776]; *Taylor* v. *Long Island Ry. Co.*, 16 App. Div. 1, [44 N. Y. Supp. 820]; *Stillings* v. *Metropolitan St. Ry. Co.*, 84 App. Div. 201, [82 N. Y. Supp. 726]; *English* v. *Southern Pacific Co.*, 13 Utah, 407, [57 Am. St. Rep. 772, 35 L. R. A. 155, 45 Pac. 47]; *Vowell* v. *Issaquah Coal Co.*, 31 Wash. 103, [71 Pac. 725].)

We do not think it necessary to discuss any of the other questions argued in the briefs.

The judgment and the order denying a new trial are reversed.

Shaw, J., and Lawlor, J., concurred.

Hearing in Bank denied.