DABAREINER and wife, Plaintiffs and Respondents, vs. WEIS-FLOG and another, Defendants and Appellants: HART-FORD ACCIDENT & INDEMNITY COMPANY, Interpleaded Defendant and Respondent.

*May 24—July 1, 1948.*

For the appellants there was a brief by *Dougherty, Arnold & Waters* of Milwaukee, attorneys for the Preferred Accident Insurance Company of New York, and *Francis Garity* of Jefferson, attorney for Bert Weisflog, and oral argument by *Mr. Suel O. Arnold* and *Mr. Garity.*

For the respondents Dabareiner there was a brief by *Mistele & Smith* of Jefferson, and oral argument by *Richard C. Smith* and *Lynn H. Smith.*

For the interpleaded respondent Hartford Accident & Indemnity Company there was a brief by *Wilkie, Toebaas, Hart, Kraege & Jackman* of Madison, and oral argument by *W. L. Jackman.*

HUGHES, J. The case was tried to the court and a jury. The jury returned a verdict favorable to the plaintiffs, and the court ordered judgment for the plaintiff Arthur Dabareiner in the amount of $294.39 with costs of $48.51, and for the plaintiff Mae Dabareiner in the amount of $4,358, with costs and disbursements of $134.49.

This appeal is primarily an attack upon the judgment in favor of Mae Dabareiner.

The jury found that the defendant Weisflog was causally negligent with respect to, (a) management and control of his car, (b) keeping a proper lookout, (c) keeping within a

proper speed under the circumstances then and there existing, and (d) keeping to his own right half of the roadway. It found the plaintiff Arthur Dabareiner free from negligence and assessed the damages of the plaintiff Mae Dabareiner for pain and suffering at $4,250, hospital and medical expense at $108.

The trial court answered the question as to damages of the plaintiff Arthur Dabareiner upon stipulation of the attorneys.

The findings of the jury with respect to negligence are not attacked upon this appeal.

Six assignments of error are presented and will be dealt with in the order raised, except that the first and last, which are closely related, will be treated together.

1. Is the verdict of the jury supported by competent medical testimony?

6. Were the defendants entitled to a new trial upon the ground of newly discovered evidence?

Mae Dabareiner is a woman fifty-one years of age and the mother of three children. She was teaching a rural school to make it possible for her to aid one of the children who was attending college. On Sunday, January 5, 1947, when the collision occurred, she was thrown against the windshield of the automobile with sufficient force to shatter the glass and cut her head. As the car swung around from the impact she was thrown against the right door, striking her right hip and arm.

According to her testimony, she remained in the car a few minutes (her husband testified that it was fifteen minutes), and then got out to another car in which she was taken to Jefferson to see Dr. Robinson. He treated the cut on her forehead and prescribed hot compresses for her arm. The next morning she returned to the school and continued to teach to the time of the trial nine months later.

On the day after the accident she noticed that her right hip was bruised and was conscious of a sore head and a pain in her back. After school that evening she again called on

Dr. Robinson to have the head wound dressed. She testified that she did not mention to the doctor the pain in her back because she thought that it might be due to menstruation.

The pain in her back continued to increase during that week, so that by Saturday she experienced difficulty in walking. The following week she went to see Dr. Grueson at Fort Atkinson, who suggested the possibility of a fracture and ordered X rays, which proved negative. He thereupon prescribed a surgical belt to be worn as a support of the lower back. This helped to some extent but the pains were severe for a month or more and persisted to the date of trial in the form of a sharp pain in the sacro region upon stooping, bending, or sudden motion, and dull ache following overexertion or housework. She further testified that she experienced pain upon becoming overtired, which interfered with her sleep.

She visited Dr. Grueson again in March and May and he urged her to continue wearing the belt. On September 5th, she visited Dr. Wendt at Johnson Creek. She gave him a history of low back pain dating back to the time of the accident. Dr. Wendt testified that his examination revealed spasm of the muscles on the right side of the spine in the lower back, and deep palpation revealed a small area of severe pain in the sacroiliac area less marked on the left side. The patient was unable to flex or extend the right leg as freely as the left. Dr. Wendt testified that his diagnosis was sacroiliac neuritis due in all probability to trauma.

He testified on cross-examination that there were seven lumbar vertebrae; also, that after stretching of the ligaments, which normally hold the joint rigid, from an injury or sudden twist, the pain might tend to increase over a long period of time.

Counsel for the appellants argue that any schoolboy knows that there are only five lumbar vertebrae; that this court should hold as a matter of law that Dr. Wendt's testimony will not support the verdict. Counsel urge this particularly since the respondent Mae Dabareiner failed to produce either Dr. Robin-

son or Dr. Grueson as witnesses. The court is aware of no rule compelling a party to produce as witnesses in court all physicians who may have been consulted for treatment. It may well be that after visiting a physician a patient many conclude that he does not wish to be treated by such physician, much less assume the responsibilities attendant upon calling him as a witness.

The appellants produced Dr. Emmet W. Bowen, a physician of Watertown, who examined Mae Dabareiner during the trial at their request. Dr. Bowen testified that his examination disclosed a very sensitive area over the right sacroiliac joint—much more so than one would ordinarily expect nine or ten months after the injury; all motions relating to the pelvis were restricted and evidently caused distress; the reflexes of the right leg were quite absent compared to those of the left leg. Dr. Bowen further testified that he felt that Mrs. Dabareiner did not suffer a sacroiliac strain, and then (after stating his reason, namely, that a strain is of sudden sharp onset) :

"I concluded first that there was a neuritis but not of traumatic but of infectious origin, and my reason for that was the elevation in temperature [99.6°], the recession of the gums in the patient's mouth, the discoloration of the crowned lower molar in the left jaw, which showed darkness on transillumination, . . . that this was the focus of the infection . . . fever, rapid pulse, and protracted case over a period of months."

It is apparent from this testimony that there was a sharp conflict in the medical testimony, and if Dr. Wendt was a competent witness it became the jury's duty to determine whose testimony was more credible.

At the time that the respondent Mae Dabareiner produced Dr. Wendt as a witness the appellants' counsel stipulated the doctor's qualifications on the record. After the trial counsel discovered that Dr. Wendt's license to practice medicine was

not on file in the office of the county clerk for Jefferson county, as required by statute. They thereupon moved the trial court for a new trail. This is somewhat akin to defending against a rightful claim of a motorist on the ground that he was delinquent in obtaining this year's license plates and had no right to be operating with outdated plates.

In any event, it cannot be said to be new evidence, because, if material, it could have been discovered by the exercise of due diligence as well before the trial as after. *Mickoleski v. Becker* (1948), 252 Wis. 307, 31 N. W. (2d) 508, and cases there cited.

The affidavits offered in opposition to the motion show without dispute that Dr. Wendt is licenced to practice in Wisconsin and has practiced since 1933 in Jefferson county. In 1933 he offered his certificate to the county clerk who made some notations thereon and through mistake returned it to Dr. Wendt, in whose possession it has since remained. When the motion for a new trial was made it was again delivered to the clerk's office for filing. In the event a new trial were ordered he would be competent to testify, and no purpose would have been served.

2. Appellants urge error by the trial court in instructing the jury:

"In determining money value of damages, you are entitled to consider the present depleted value of a dollar and its lessened purchasing power."

Counsel concede that this court in *Zeinemann v. Gasser* (1947), 251 Wis. 238, 247, 29 N. W. (2d) 49, considering whether damages awarded by a jury were excessive, said:

"The jury had a right to award damages based on economic conditions existing at the time the verdict was rendered, and this court will give recognition to economic conditions in reviewing verdicts so rendered."

However, counsel contend that there is a valid distinction between a rule which permits the jury to take into account economic conditions and one which upholds a trial court in admonishing a jury in its instructions that it should take into consideration the depleted value of the dollar.

The rules guiding a jury's deliberations are to be given in the form of instructions by the trial court and should cover all material phases of the jury's work applicable to the particular case. It is rather startling to suggest that the court ought to withhold an instruction from the jury so that it might remain ignorant of its rights and duties in the case submitted to it.

While the court might have omitted from the instruction the words "depleted" and "lessened" in order that the instruction have more universal application, the inclusion of those terms was not prejudicial error since there is a clearly lessened purchase power in the dollar at the present time.

3. Appellants urge as error the trial court's striking of a question put to Dr. Wendt on cross-examination and his answer covering the sacroiliac pain.

"Q. Please answer the question, doctor. You wouldn't expect it to take thirteen days to get acute would you? A. No."

From an examination of the record it appears that the motion to strike was based upon the assumption in the question that the pain did not become acute until thirteen days after the injury. What counsel for the appellants had in mind was the fact that Dr. Grueson's letter to the appellants indicated that Mrs. Dabareiner visited his office on the thirteenth day following the accident and that it was strange that she had not consulted him earlier.

The trial court correctly held that upon the state of the record—viz., the testimony of Mrs. Dabareiner that she suffered substantial pain from Monday after the accident, becom-

ing so severe by Saturday as to interfere with her walking—the question as framed was contrary to the record and improper.

4. Counsel also contend that the trial court erred in admitting in evidence several charts or drawings of the human pelvis. The question of the necessity of these exhibits was a matter resting within the sound discretion of the trial court. There is certainly nothing about them which would prejudice the jury or jeopardize the rights of the appellants.

5. The appellants attack the damages as excessive. As indicated earlier in the opinion, the medical testimony was in sharp conflict as to the cause of Mrs. Dabareiner's physical condition. However, both physicians found substantial objective symptoms to corroborate the pain of which she complained. In addition to the ailments enumerated herein in disposing of the first question raised on this appeal, the respondent Mae Dabareiner testified that since the injury she has had frequent and severe headaches; is unable to sit comfortably except for short periods and is aware of nervousness and irritability; she also has a scar on her forehead. Dr. Wendt testified that her present weakened back condition will be permanent. In view of the entire record, we cannot say that the amount allowed is excessive.

Appellants' final point is that the jury's failure to award damages to the appellant Bert Weisflog indicates that it was motivated by passion and prejudice.

Weisflog testified that he was injured and suffered pain and disability for six months following the accident, that his car was also damaged. He testified as to the amount of the damage to his car, but offered no testimony of a garageman as to the reasonableness of the charges and offered no bill in corroboration of his claim. He consulted no physician, although claiming to have been painfully hurt. In view of this, it is probable that the jury concluded that his testimony was

offered as a smoke screen to divert attention from the respond-
ents' case. The jury's answer that Weisflog suffered no
damages does not indicate perverseness.

*By the Court.*—Judgment affirmed.

MARTIN, J., took no part.