[Civ. No. 14390. First Dist., Div. Two. Nov. 8, 1950.]

WILBUR L. MARTIN, Respondent, v. IRENE MANS-
FELDT, Appellant.

Morgan J. Doyle and James A. Himmel for Appellant.

Henry C. Clausen for Respondent.

GOODELL, J.—Respondent, the surviving husband of
Vada S. Martin, sued appellant for $50,000 damages arising
from her death. The court sitting without a jury awarded
him a judgment for $36,566.17.

Appellant admitted liability and her principal con-
tention if not her only one is that the judgment is excessive.
Special damages arising from funeral expenses in San Fran-
cisco and Baltimore, transportation costs, and other burial
expenses amounting to $1,566.17 were conceded to be proper.

Respondent and decedent married in 1935. They had no
children. At the time of Mrs. Martin's death, on October 4,
1945, she was 38 with an expectancy of 28.96 years, and he 40
with an expectancy of 27.61 years.

Respondent's testimony shows that both spouses were raised
in Maryland and went to high school together. Their ten
years of married life were congenial and happy. The hus-
band's employment for about five years took him at times away
from their home (which was in Baltimore) and his wife accom-

panied him on many of his trips, his testimony being that they visited all but about three states either on business or vacation trips. When at home they spent the evenings together, attended church together, and seem to have been companionable, with similar tastes. He testified that their mutual love and affection remained constant throughout the marriage.

Mrs. Martin was a college graduate, became a registered nurse in Baltimore in 1929, was employed as such at the time of her marriage and continued nursing for two years thereafter. She was a competent woman and a good manager. She attended to all the usual household duties.

In December, 1942, respondent enlisted in the Navy and became a warrant officer. Theretofore the spouses had not been apart, but his duties took him to Cuba for eight months. Thereafter he was sent to a training school, then to California. His wife accompanied him here. In April or May of 1944 he was sent overseas and stationed in the Admiralty Islands. After his enlistment and until he went overseas they were together excepting while he was in Cuba. When he went overseas she remained in San Francisco. In June, 1945, she became employed as a nurse in a San Francisco hospital where she earned $75 or $80 a week.

They were economical and saving. In the ten years they built up from their joint earnings a capital of about $15,000, consisting of a six-room home in Baltimore, some war bonds and other securities and about $5,000 in savings bank. Respondent left financial matters largely if not entirely to his wife and admitted that she was a better manager than he. While overseas he made her a monthly allotment of $175.

Respondent's testimony presents a picture of a home life which was harmonious; a wife who was a healthy, cheerful, affectionate, spirited woman, of good personality, and attentive and devoted to her husband.

Appellant claims that the evidence bearing upon the value of the services rendered by the wife to her husband, or to be rendered had she lived, is extremely sketchy. It is difficult to see how so, or what more could have been presented.

Appellant cites twelve cases which deal with excessive damages, six of which are death cases. Only one of the six was an action by a husband for the death of his wife, and in that case (*Redfield* v. *Oakland etc. Co.*, 110 Cal. 277 [42 P. 822, 1063]) the contention that the verdict was excessive was rejected and the judgment affirmed. The other five are: *Burk* v. *Arcata & Mad River R. R. Co.*, 125 Cal. 364 [57 P. 1065,

73 Am.St.Rep. 52], brought by an adult sister and two adult brothers of their deceased unmarried brother, aged 34, where a judgment for $1,500 was held excessive because plaintiffs had not proved *any* pecuniary loss by the death; *Dickinson* v. *Southern Pacific Co.*, 172 Cal. 727 [158 P. 183], where the verdict of $10,230 was held excessive in an action brought on behalf of decedent's wife, two sons, two daughters and eight grandchildren where decedent was almost 79 years old, with an expectancy of about 4.8 years and his net earnings were but $700 a year; *Parsons* v. *Easton,* 184 Cal. 764 [195 P. 419], brought by a father and mother for the death of their son who was over 27 years old, where he was earning but $360 a year and had not been of pecuniary benefit to his parents but in reality was a "burden and cause of solicitude and care" and where a verdict of $6,000 was held excessive; *Brown* v. *Beck,* 63 Cal.App. 686 [220 P. 14], brought by a widow for the death of her husband, where the contention was rejected that a verdict of $7,500, was excessive; *Ure* v. *Maggio Bros. Co.,* 24 Cal.App.2d 490 [75 P.2d 534], where the plaintiff, a mother of 79 years with an expectancy of about five years recovered a $10,000 verdict for the death of her 47-year-old daughter, wherein the judgment was reversed as excessive.

Of the remaining six cases, three are personal injury actions where the damages were held not excessive (*Meek* v. *Pacific Elec. Ry. Co.,* 175 Cal. 53 [164 P. 1117]; *Kirschbaum* v. *McCarthy,* 5 Cal.2d 191 [54 P.2d 8]; *Mudrick* v. *Market St. Ry. Co.,* 11 Cal.2d 724 [81 P.2d 950, 118 A.L.R. 533]) while in *Gladstone* v. *Fortier,* 22 Cal.App.2d 1 [70 P.2d 255], a $6,500 judgment was reduced on appeal to $4,000, and in *Wallace* v. *Miller,* 26 Cal.App.2d 55 [78 P.2d 745] the trial court had granted a new trial because the damages were *inadequate* and the appellate court held that the new trial should not have been limited to the issue of damages alone. The remaining case, *Campanella* v. *Campanella,* 204 Cal. 515 [269 P. 433], was an action for *deceit* arising out of a land transaction where it was held that the judgment for $3,958.33 was not excessive.

Thus it appears that appellant has not supplied any authority at all comparable with the case at bar on its facts or circumstances. Appellant does not claim that any of these cases is comparable, but apparently has cited them for certain general language found in the opinions, as to which there is not, and cannot be, any controversy whatever.

In the Meek case, cited by appellant, the court said: "Conceding that part of the service performed by the wife might be the subject of market value it is not true when applied to all, since the aid, advice, and assistance rendered a husband in conducting his affairs, and management of the home, is not to be tested by what such service could be hired for. Hence, 'there is no need of direct or express evidence of the value of a wife's services, either by the day, week, or any other stated period, in order to entitle the husband to recover for the loss thereof, as the relation which she sustains to him is a special and peculiar one, and the actual facts and circumstances of each case should guide the jury in estimating for themselves, in the light of their own observation and experience, and to the satisfaction of their own consciences, the amount which would fairly and justly compensate the husband for his loss.' [Citations.]"

In citing *Parsons* v. *Easton, supra,* appellant quotes certain language. That language is not found therein but in *Griffey* v. *Pacific Electric Ry. Co.,* 58 Cal.App. 509 at 521-2 [209 P. 45], in which case the action was brought by the surviving husband and the father and mother of Mrs. Griffey for her death. The jury returned a general verdict of $10,000 but their answers to special questions were to the effect that the husband's damage was $1,000, the father's $8,000, and the mother's $1,000. An order granting a new trial was affirmed, the court on appeal holding that the verdict was excessive as to the father and mother.

Appellant quotes the following from *Dickinson* v. *Southern Pacific Co., supra,* 172 Cal. 727, 731: "It is not possible to measure in exact terms of money the loss which a surviving husband, wife, or child may have sustained through being deprived of the comfort and society of the deceased spouse or parent. For this reason, some play is allowed to the discretion of the jury by the provision of section 377 that such damages may be allowed as under all the circumstances of the case may be just. But in fixing the amount, the jury is always bound by the fundamental rule that *pecuniary* damage is the limit of recovery, and the amount allowed must bear some reasonable relation to the pecuniary loss shown by the evidence."

Stress is laid by appellant on the last sentence, which emphasizes (as other cases do) *pecuniary* damage, and they argue that the record is destitute of competent evidence respecting the earning power of decedent. We by no means agree with this. The decedent was not merely a housewife but she had

a profession of her own at which she worked before her marriage, for two years thereafter, and while respondent was overseas. The earning power of registered nurses and the demand for their services before and since 1945 are matters of common knowledge. The precise period that she was employed as a nurse during her marriage does not seem to be an important factor, but her established competency and her earning capacity as a nurse were certainly factors for the court to consider. That the spouses by their joint efforts had accumulated $15,000 or thereabouts in ten years was another important factor. But eliminating the decedent's potential earnings, respondent's pecuniary outlay for housekeeping services in the future (*Lasater* v. *Oakland Scavenger Co.*, 71 Cal.App.2d 217 [162 P.2d 486]), would be of no inconsiderable size. While there was no proof that he had employed a housekeeper it was a possibility well within the scope of damages.

With respect to the limited functions of an appellate court when a claim of excessive damage is made therein, the court said in the leading case of *Bond* v. *United Railroads,* 159 Cal. 270, 286 [113 P. 366, Ann.Cas. 1912C 50, 48 L.R.A.N.S. 687] : "Our power over excessive damages exists only when the facts are such that the excess appears as a matter of law, or is such as to suggest at first blush, passion, prejudice, or corruption on the part of the jury. (See *Hale* v. *San Bernardino etc. Co.*, 156 Cal. 716 [106 P. 83] ; *Wheaton* v. *North Beach etc. Co.*, 36 Cal. 591.) Practically, the trial court must bear the whole responsibility in every case."

In *Vernon* v. *Plumas Lumber Co.*, 71 Cal.App. 112, 128 [234 P. 869], the court said: "In the instant case the trial was had before the court sitting without a jury and, unless there is some showing to that effect, we are not at liberty to assume that the trial court acted either from passion or prejudice or from any improper motives whatever." The same is true in this case.

The judgment is affirmed.

Nourse, P. J., and Dooling, J., concurred.