[Civ. No. 14950. First Dist., Div. One. May 27, 1952.]

HARRY A. BURKE et al., Respondents, v. CITY AND COUNTY OF SAN FRANCISCO et al., Appellants.

Dion R. Holm, City Attorney, and Lawrence S. Mana, Deputy City Attorney, for Appellants.

Boyd, Taylor & Reynolds for Respondents.

WOOD (Fred B.), J.—This action was brought by Harry A. Burke, Donald L. Burke, and Hazel E. Stack, the surviving husband and the adult son and adult daughter of Bessie Burke, against the city and county of San Francisco, Edmund Cassidy and Charles Peterson, employees of the city and county, for damages for the death of Bessie Burke resulting from an automobile collision. Included in the complaint was a count for personal injuries and property damage sustained by Harry Burke.

At the conclusion of the trial and before submission of the cause to the jury, the defendants moved for a directed verdict, which was granted as to Peterson and denied as to the other defendants.

Verdicts were rendered (1) in favor of the three plaintiffs, against Cassidy and the city and county, in the sum of $50,000,

and (2) in favor of Harry Burke, against Cassidy and the city and county, in the sum of $1,158.21.

Thereupon, Cassidy moved for judgment notwithstanding the verdict, predicated upon the failure of the plaintiffs to present and file their claim for damages as required by section 1981 of the Government Code. Upon suggestion of counsel for the plaintiffs it was ordered that the motion be argued at a later date to be fixed by stipulation. Upon the following day and prior to the argument of this motion, the clerk of the court entered judgment upon both verdicts.

Both defendants moved for a new trial. The motions for new trial and for judgment notwithstanding the verdict were argued at the same time. The court denied the motion for new trial and granted Cassidy's motion for judgment notwithstanding the verdict.

Both defendants appealed from the judgment and the whole thereof.

The judgment against Cassidy during the pendency of his motion for judgment notwithstanding the verdict was prematurely entered (Code Civ. Proc., § 664, 2d sentence), therefore ineffective and void as to him. (*Shapiro* v. *Equitable Life Assur. Soc.*, 76 Cal.App.2d 75, 99 [172 P.2d 725].) This is not like *Reed* v. *Cortez*, 88 Cal.App.2d 416, 423-424 [198 P.2d 911], in which such an entry, though erroneous, was deemed nonprejudicial in view of the subsequent denial of the motion upon evidence which fully supported the denial.

The judgment against Cassidy though void is appealable (see 2 Cal.Jur. 184, "Appeal and Error," § 40) and should be reversed, with directions to the trial court to enter judgment in favor of Cassidy notwithstanding the verdict.

The city and county's appeal from that portion of the judgment which awarded damages to Harry Burke only, is deemed abandoned. In its opening brief upon this appeal the city and county, reciting that it does not claim that portion excessive or that the asserted errors affected it, stated "this brief is restricted solely to . . . the verdict for $50,000. . . ."

In support of its appeal from the $50,000 award the city and county claims (1) error in permitting Harry Burke to testify concerning the value of the decedent's services as housekeeper, (2) error in an instruction concerning the depreciated value of the dollar, and (3) that the verdict is excessive.

■ (1) *Concerning the testimony as to the value of decedent's services as housekeeper,* it appeared that the family home was a seven-room house and that the decedent, who was in good health, did the housework and the washing and cooked the meals. No help was employed. Her husband did the plumbing and painting, took care of the yard, and helped with the washing on his days off. The daughter, whose 5-year-old child decedent cared for, worked at her profession as a trained nurse and spent her weekends with her parents, assisting her mother with the housework about two days a week.

■ Asked what in his opinion it was going to cost him to replace his wife's place in that home insofar as the housework and general maintenance of the institution was concerned, eliminating therefrom any charge for the care of the child, Harry Burke said, "Yes, I have an opinion, between $225 and $250 a month."

Defendants advance three reasons why this opinion evidence should not have been admitted. ■ Their first is that no evidence to prove the value of services of a nontechnical nature is required, for the trier of the facts may properly bring to bear his general knowledge in determining the value of such services. That is true but it is not a sound reason for excluding evidence on that subject. ■ When such evidence is admitted the trier of the facts "may fix the value from a description of the services performed bringing to bear his own general knowledge and is not necessarily bound by express evidence of the value of the services performed." (*Estate of Reinhertz,* 82 Cal.App.2d 156, 160 [185 P.2d 858, 186 P.2d 755], which involved services in making household repairs, and evidence of the value thereof was introduced.) In *Cowdery* v. *McChesney,* 6 Cal.Unrep. 315 [58 P. 62], the exclusion of opinion evidence as to the reasonable value of services as housekeeper and nurse was deemed prejudicially erroneous. In *Seib* v. *Mitchell,* 10 Cal.App.2d 91 [52 P.2d 281], the court overruled a contention that the expert testimony given was legally insufficient to prove the value of services rendered in the care of a decedent during her declining years, saying: "The expert testimony was properly received but such testimony was not necessary. The circumstances of the amount and kind of services actually rendered were in evidence and the value of the services was for the trial court to determine." (P. 95.)

Defendant objects that the trial court admitted this opinion

testimony upon an erroneous theory. It does not appear that the court limited itself to a particular theory for the admission of this evidence, nor would that be material if the evidence was legally admissible.

The defendant claims it was not admissible under any possible theory because the subject matter of the testimony was not within any of the exceptions to the rule which precludes a witness from expressing an opinion; i.e., not the case of a property owner testifying as to its worth, not a question of service, art or trade lying outside the common experience of men, and not a matter of practical necessity as when the things observed are too complex or too subtle for conveyance to court or jury except by way of opinion. The exceptions to that rule are not thus narrowly confined. Admission of opinions of neighbors as to the reasonable value of board, lodging, and washing furnished (without first proving there was no market value therefor), was approved in *Warder* v. *Hutchison*, 69 Cal.App. 291, 299 [231 P. 563]. The admission of testimony showing the reasonable value of similar services was approved in *Colwell* v. *Gardner*, 126 Cal.App. 403, 410 [14 P.2d 825]. Defendant seeks to distinguish the Warder case upon the ground that a neighbor might well be disinterested but that here the plaintiff was making a self-serving statement. That is a distinction without a difference. ▮ A plaintiff may testify as to the value of her own services as bookkeeper, saleswoman, and clerk. (*Rosenow* v. *Wiener*, 11 Cal.App. 294, 296 [104 P. 839].) Such a witness is no less interested than was the plaintiff in our case. A husband was deemed qualified to express an opinion as to the value of his wife's household services in *Murphey* v. *Blankenship*, (Tex.Civ.App.) 120 S.W.2d 309, 313.

▮ Defendant suggests there was no showing that the husband was qualified to give an opinion. As to that, the trial judge, upon the hearing of the motion for new trial, pertinently remarked "Who would be better qualified to give an opinion as to what it's going to cost him to replace the services of a 24-hour-a-day housekeeper than the man who has been living with the person who has been replaced?" They had been married 28 years and the witness was thoroughly familiar with what went on in the home.

Defendant further claims that this opinion evidence was on an ultimate fact to be decided by the jury, citing *Hastings* v. *Steamer Uncle Sam*, 10 Cal. 341. That was an action for

damages for breach of an alleged contract to transport the plaintiff and his family to New York by way of Nicaragua. The asserted breach was that defendant conveyed plaintiff and his family to the Isthmus of Panama where they suffered from the diseases of the climate and were detained 16 days. A witness was permitted over objection ''to give his estimate of the value of plaintiff's services per day. These the witness placed as high as one hundred dollars; and, as ground for his opinion, stated that the plaintiff was a speculator, possessed of a large property, money invested in stocks, rents, and other sources of income, and frequently made from one to five hundred dollars a day. The witness was unable to stake the value of the plaintiff's services in any other capacity or employment.'' (Pp. 341-342.) That decision signifies that a mere estimate of value based upon pure speculation cannot qualify as legally admissible evidence. Defendant also invokes *Fleming* v. *Albeck*, 67 Cal. 226 [7 P. 659], an action for libel. The complaint neither alleged special damage nor stated a cause for special damage. A witness was asked what in his opinion would be the fair amount of money in compensation for plaintiff's damages. That, of course, was the ultimate issue for the jury, not a witness, to decide. In *Stuart* v. *Dotts*, 89 Cal.App.2d 683 [201 P.2d 820], a police officer who did not qualify as an expert was allowed to testify that in his opinion the plaintiff in an accident case was not in a crosswalk when struck. This opinion was based upon observations made by the witness at the scene of the accident after it occurred and upon conversations which the witness had had with certain persons who saw the accident. The impropriety of the allowance of such an opinion in evidence is obvious. It bears no similarity to the opinion of a husband concerning the value of his wife's services as a housekeeper. Similarly different from the question here under consideration were the questions asked of putative experts in *Wilkerson* v. *City of El Monte*, 17 Cal.App.2d 615, 621 [62 P.2d 790], (was the condition at a street intersection a dangerous one?), and *Moore* v. *Norwood*, 41 Cal.App.2d 359 [106 P.2d 939] (could the plaintiff have avoided the accident?). We must bear in mind that ''there is no general rule of evidence which permits a witness to substitute opinions for facts. Such a rule would lead to the utter confusion and confounding of the administration of justice. The true rule is simple and, so far as this state is concerned, well established: to permit, or to refuse to permit, such ques-

tions is a matter resting largely in the discretion of the trial court, which discretion will not here be reviewed unless it is made plain that the court's ruling in admitting the evidence has worked an injury. ▮ Generally speaking, the admission of the answer to such a question cannot work an injury where a fair latitude upon cross-examination is allowed, for under such cross-examination the facts are certain to be adduced. It will be found frequently that an appellate tribunal upholds the rulings of the trial court in sustaining an objection to such questions, but the cases are far less numerous where it has felt compelled to reverse the inferior tribunal for permitting them.'' (*Nolan* v. *Nolan,* 155 Cal. 476, 480-481 [101 P. 520, 132 Am.St.Rep. 99, 17 Ann.Cas. 1056].) In *Rosenow* v. *Wiener, supra,* 11 Cal.App. 294, in respect to plaintiff's testimony as to the value of her own services, the court observed that ''if defendant was dissatisfied therewith, he could have introduced testimony upon the same point; but he neglected to do so, and the plaintiff's evidence stands uncontradicted.'' (P. 296.) In the instant case, the defendant neither cross-examined the plaintiff on this phase of his testimony nor tendered any evidence of its own upon the subject.

(2) *The questioned instruction on the depreciated value of the dollar* was in these words: ''You are instructed . . . that this court takes judicial notice of the fact that the purchasing power of the dollar is less as compared with ten years ago. You are therefore instructed to consider this as an established fact in this case. The value of the sum awarded to plaintiff is to be measured, not by the number of dollars named in the verdict, but in their comparative ability to furnish the necessaries of life.''

Defendant recognizes it is proper for a reviewing court to take into consideration the increase in the cost of living and the decreased purchasing power of the dollar when considering whether or not a money verdict is excessive. It claims, however, it is not legally proper to advise a jury it may take those factors into consideration. With the latter view we do not concur. If the reviewing court may consider such factors it would seem eminently fitting for the trier of the facts to do so. This was indicated recently in *Kircher* v. *Atchison, T. & S. F. Ry. Co.,* 32 Cal.2d 176 [195 P.2d 427]. In considering whether or not a certain verdict was excessive, the court said: ''It is a matter of common knowledge, and of which judicial notice may be taken, that the purchasing

power of the dollar has decreased to approximately one-half what it was prior to the present inflationary spiral [citations], and *the trier of the fact should take this factor into consideration in determining the amount of damages necessary to compensate an injured person for the loss sustained as the result of the injuries suffered.*" (P. 187; emphasis added.) ▮ When the jury is the trier of the fact, it would seem quite proper for the court to bring this factor to the attention of the jury. We are not without precedent. An instruction that "In determining the money value of damages, you are entitled to consider the present depleted value of the dollar and its lessened purchasing power" was approved by the Supreme Court of Wisconsin in *Dabareiner* v. *Weisflog*, 253 Wis. 23 [33 N.W.2d 220, 223]. In so doing, the court said "It is rather startling to suggest that the court ought to withhold an instruction from the jury so that it might remain ignorant of its rights and duties in the case submitted to it." (P. 223.) As to the wording of the instruction, the court observed that while the trial court "might have omitted from the instruction the words 'depleted' and 'lessened' in order that the instruction have more universal application, the inclusion of those terms was not prejudicial error since there is a clearly lessened purchase power in the dollar at the present time." (P. 223.) In the instant case it would have been better to have omitted the reference to the 10-year period of depreciation that the instruction might have general application, but that statement was accurate (the loss occurred in 1949 and the instruction was given in 1950), and the effect of the last sentence of the instruction was to admonish the jury to use the present purchasing power of the dollar when measuring the damages in terms of money. Other recent decisions also approve instructing the jury on this subject. In *New Amsterdam Cas. Co.* v. *Soileau*, 167 F.2d 767, the court held that the trial court in a personal injury case "correctly charged that in fixing the award the jury could consider the present purchasing power of the dollar." (P. 771.) In *Burlington Transp. Co.* v. *Stoltz*, 191 F.2d 915, the court approved an instruction in which the trial court informed "the jury that it might also 'consider the present purchasing power of the dollar and award such damages, if any, as under all of the circumstances of the case may be just . . .' " (P. 918.) Observing that it has been held that a reviewing court may

consider the present purchasing power of the dollar when passing upon the adequacy of a verdict, the court said "If the present value of the dollar is an element to consider in determining whether a verdict is adequate or excessive, it is proper to guide the jury in its deliberations that a proper instruction relating thereto be given." (P. 918.)

In conclusion upon this point, we note that a failure to give such an instruction would not necessarily be erroneous. (See *Lemere* v. *Safeway Stores, Inc.*, 102 Cal.App.2d 712, 728 [228 P.2d 296].)

(3) *In claiming that the verdict is excessive,* defendant recognizes the principle that the award must be "so disproportionate to reasonable compensation for the monetary loss sustained by the plaintiffs as to be explicable only on the ground that passion or prejudice was allowed to play a strong part in the rendition of the verdict." (*Jones* v. *Hedges,* 123 Cal.App. 742, 755 [12 P.2d 111]), and that "the only means of discovering the existence of passion and prejudice as influencing a verdict is by comparing the amount of the verdict with the evidence before the trial court. To say that a verdict has been influenced by passion and prejudice is but another way of saying that the verdict exceeds any amount justified by the evidence." (*Zibbell* v. *Southern Pac. Co.,* 160 Cal. 237, 254 [116 P. 513].)

But here we have the loss of a member of a family, the wife of one plaintiff and the mother of the other two. "Another factor to be considered in cases involving damages for the loss of a member of the family is that, although damages must be measured by the pecuniary loss to the plaintiffs, in fixing such loss the trier of fact is not limited to proof of loss in dollars and cents, but may properly consider the pecuniary value of the loss of such noneconomic interests of a family as loss of comfort, society and protection. [Citations.]" (*Holder* v. *Key System,* 88 Cal.App.2d 925, 940 [200 P.2d 98], holding not excessive an award of $45,000 to the widow and adult son and adult daughter of the deceased; of the three, only the widow was a dependent.) As the verdict in the instant case was properly in a lump sum for the three plaintiffs, this element of damage for all three, not just for the husband, was included. The jury was properly informed as to this element of damage and the defendant has taken no exception to the instructions given thereon.

At the time of the accident, the decedent was 47 years

old; her husband, 48; the son, 26; the daughter, 27. The decedent's life expectancy was 23.08 years; that of her husband, 22.36 years. Her health was good. Decedent and her husband had been married 28 years. They planned and built their home and had lived in it a number of years. In addition to taking care of the home, the decedent received $35 a month as secretary of a lodge. She accompanied her husband upon hunting, fishing, and camping trips.

The son lived with his parents. The daughter was a widow who worked as a nurse, spending the weekends with her parents. Her daughter, under 4 years of age at the time of the accident, lived with the grandparents. The decedent gave the child a mother's care. Decedent was a devoted wife and mother.

This presents a vivid picture of a member of a family who devotedly and without stint gave "comfort, society and protection" to her husband, son, and daughter, in the fullest and finest meaning of those words. And there is every indication that she would have continued to do so for an appreciable period of time but for her sudden taking. That loss to the husband, son and daughter cannot be measured with mathematical precision in terms of money but the jury was entitled to award a quite substantial sum therefor.

Then there was the element of the husband's loss in respect to the housekeeping services, more precisely measurable in terms of money. We, of course, do not know how much the jury awarded, respectively, for the economic and noneconomic factors. It is inferable that they awarded a substantial sum for each.

In this case, as in *Drotleff* v. *Renshaw,* 34 Cal.2d 176 [208 P.2d 969], the cases cited by defendant "furnish no criterion on the present record, for they involve various factual considerations of distinguishing significance" and "As a matter determinable in the exercise of a sound discretion, the amount of damages fixed by the jury and approved by the trial court [upon motion for new trial, in that case as in this] will not be disturbed on appeal unless the evidence shows that the award is so disproportionate to any reasonable limit of compensation as to indicate that it was the result of passion, prejudice, or corruption on the part of the triers of fact." (P. 180.) In our case the defendant would discount the weight and significance of the trial judge's approval of the amount of the verdict, when he denied the motion for new trial, upon the premise that such approval

"was based upon inadmissible evidence as to the value of the services rendered by the decedent as a housekeeper." But that premise is unsound, as we have indicated. The evidence was admissible.

One of the defendant's cases is *Hunton* v. *California Portland Cement Co.*, 64 Cal.App.2d 876 [149 P.2d 471], in which a verdict of the jury for $40,000 was reduced by the trial court to $18,000, and further reduced by the appellate court to $10,000. That case involved the loss of the services of a 17-year-old son. It appeared that his then employment by his father was worth $1,200 a year to the father, which the trial judge upon motion for a new trial estimated would amount to $4,800 if the boy had lived to 21. In view of the depreciation of the dollar since the date of the accident the trial judge concluded $18,000 would be the reasonable equivalent of $4,800. The appellate court apparently deemed that ratio excessive. It considered that an allowance of $3,000 or $4,000 for the boy's services during the remainder of his minority would have been liberal; that the evidence indicated that any contributions from the deceased for the support of the father in the latter's old age were remote and problematical and an allowance in excess of $3,000 or $4,000 therefor would hardly be supported by any evidence. Adding to these factors an amount representing the pecuniary loss of the comfort, society and protection of the decedent, the appellate court concluded that the largest amount which found support in the evidence was $10,000. The mere recital of those facts demonstrates the inapplicability of the decision in that case to the facts of the instant case. *Lasater* v. *Oakland Scavenger Co.*, 71 Cal.App.2d 217 [162 P.2d 486], involved the death of a wife and mother. The reviewing court sustained an award of $14,000. The record disclosed no express evidence concerning the value of the wife's services as housekeeper. The reviewing court, for the purpose of a mathematical computation, used the sum of $100 per month as a reasonable measure of the value of such services. The defendant herein contends that, using $100 a month as a yardstick and increasing it to allow for the depreciation of the dollar since the decision in the Lasater case, the decision in that case demonstrates that the verdict in our case is excessive. We do not understand that the court in the Lasater case used $100 a month as a maximum figure. It was merely a convenient yardstick for purposes of illustration in considering a particular verdict. In *Wood* v. *Keller*, 72

Cal.App.2d 14 [163 P.2d 904], a wrongful death case, an award of $6,500 as general damages was sustained as supported by the evidence concerning the nature of the services rendered by the wife, apparently without express evidence of the value thereof. The court refused to consider the contention that the damages were excessive, because the appellant had failed to present that question to the trial court upon motion for new trial. In *Potter* v. *Empress Theatre Co.,* 91 Cal.App.2d 4 [204 P.2d 120], a verdict of $50,000 in favor of the husband and the parents of a decedent, for her death, was reduced to $40,000 by the trial court, not by the appellate court. The latter court merely held that the reduced award was not excessive. The question whether or not $50,-000 would have been excessive was not an issue before the appellate court. In *Martin* v. *Mansfeldt,* 100 Cal.App.2d 327 [223 P.2d 501], the court held that an award of $36,566.17 to the surviving husband could not be deemed excessive as a matter of law. It does not follow therefrom that a higher award, for a husband, or for him and an adult son and daughter, would have been deemed excessive.

Under the circumstances and applying the principles expounded in the cases cited, we conclude that there is nothing in the present record compelling or suggesting the conclusion that the award of $50,000 to the three plaintiffs was excessive as a matter of law.

The judgment against the city and county of San Francisco is affirmed. The judgment against defendant Cassidy is reversed with directions to the trial court to strike it from the record and enter judgment in Cassidy's favor notwithstanding the verdict.

Peters, P. J., and Bray, J., concurred.

Appellant's (City and County of San Francisco) petition for a hearing by the Supreme Court was denied July 24, 1952.